GANGI v. D. A. SCHULTE, Inc.

No. 134.

Circuit Court of Appeals, Second Circuit.

July 20, 1945.

Isidore Entes, of New York City, for appellant.

Abraham Friedman, of New York City (Ernst, Gale, Bernays, Falk & Eisner and Edwin A. Falk, all of New York City, on the brief), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Appellant, suing on behalf of himself and nineteen others, brought this action under § 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b), to recover amounts claimed to be due them under § 7, 29 U.S.C.A. § 207, because of the failure of appellee, their employer, to pay them overtime wages from October 24, 1938, to February 5, 1942, for their services as maintenance employees in appellee's twenty-three story loft building at 571–583 Eighth Avenue, New York City. After the decision of the Supreme Court in A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638, June 1, 1942, holding that the Act applied to maintenance employees where the tenants of a building are engaged principally "in the production of goods for interstate commerce," the employees at appellee's building, through two representatives of their union, demanded that appellee pay them the overdue overtime compensation and an equal amount as liquidated damages. Appellee denied liability in the belief that the tenants of the building were not engaged principally "in the production of goods for interstate commerce." For approximately two months it refused to pay. Then, since appellants threatened suit, it offered to pay all the overtime compensation without the liquidated damages. Appellants accepted, and upon receipt of payment each one executed a formal release under seal, acknowledging receipt of the specified sum as "payment in full" of all sums due under the Act and releasing appellee from "any other or further obligations in connection therewith." Seven months thereafter they instituted this action. The District Court upheld affirmative defenses of accord and satisfaction and release, D.C.S.D.N.Y., 53 F.Supp. 844, and dismissed the complaint. The questions before us on this appeal are whether the releases are valid, and if invalid whether the Act covers these appellants.

The releases must be held ineffective to bar the action. In Brooklyn Sav. Bank v. O'Neil, and Dize v. Maddrix, 65 S.Ct. 895, decided since the judgment below, the Supreme Court has now determined that an employee's mere written waiver of his right to liquidated damages does not bar a subsequent action. Appellee makes much of the fact that the Court there expressly declined to pass upon the validity of a settlement made as a result of a bona fide dispute, as that was not the case under consideration.[1] Since the District Court here found such a dispute to exist, it urges us to uphold these

---

[1] The Court took occasion to cite law review articles dealing with the problem, as well as the differing views among the lower courts, making separate reference to decisions holding that "right to unpaid minimum wages and overtime compensation constitute a single right." Brooklyn Sav. Bank v. O'Neil, 65 S.Ct. 895, 900, 901, n. 13, 903, n. 21.

settlements as a valid accord and satisfaction.[2] But in Fleming v. Post, 2 Cir., 146 F.2d 441, 443, where this court adopted the rule later approved in the O'Neil case that a release of liquidated damages was invalid, it went on to say definitely that "we should reach the same result if there were here an accord and satisfaction." And no other result would be in keeping with the policy and provisions of the Act. For as this court pointed out in Rigopoulos v. Kervan, 2 Cir., 140 F.2d 506, 507, 151 A.L.R. 1126, the employer's liability for unpaid overtime compensation and liquidated damages in an additional equal amount "is a single and entire liability," which "is not discharged in toto by paying one-half of it." That being so, it is certainly not discharged by the employer's mere assertion, no matter how vigorous, that he does not come within the Act. Otherwise employers would have available a simple method for avoiding "the deterrent effect which Congress plainly intended that Section 16(b) should have." Brooklyn Sav. Bank v. O'Neil, supra, 65 S.Ct. 895, 903.[3]

In practical fact the O'Neil case does not offer support for appellee's contention. For there, too, the employer disputed coverage, finally paid the overtime wages due, and forced suit to be brought for the balance. Except for the fact that the present appellee may have been more vociferous in its assertion that its business is local,[4] the facts here are exactly the same as those in the O'Neil case. It may be that, where there is a genuine dispute not as to the law of the Act, but as to facts, such as the amount of labor actually performed, the parties may work out together a fair adjustment of the dispute and that it was this type of situation which the Supreme Court wished to reserve for further consideration. But use of a disagreement as to the legal interpretation of the Act, turning upon the nature of the employer's business, as a basis for reducing payments under those required by the Act, appears definitely prohibited by the O'Neil case. See 57 Harv.L.Rev. 257; 55 Harv.L.Rev. 150; 43 Col.L.Rev. 355, 359; cf. also Dodd, Administration of Workmen's Compensation, 1936, 186 et seq.

█ So far as the coverage of the Act is concerned, we think that, in the light of our decisions and the standards followed by the Wage and Hour Administrator, the employees were within its protection for at least a part of the period involved. In Callus v. 10 East Fortieth Street Building, Inc., 2 Cir., 146 F.2d 438, this court applied the principle of the Kirschbaum case to uphold the Administrator's standard that building maintenance employees are within the protection of the Act when more than 20 per cent of the building is occupied by tenants engaged in the production of goods for interstate commerce. Though the Supreme Court reversed this decision in 10 East 40th Street Building, Inc. v. Callus, 65 S.Ct. 1227—on the ground that the building there was actually occupied for offices and not for manufacturing, even though some of them were administrative offices of interstate producers —it did not discuss or repudiate the Administrator's standard. Hence in Baldwin v. Emigrant Industrial Sav. Bank, 2 Cir., 150 F.2d 524, we concluded that the standard was still reasonable and applicable. We think that is particularly true as applied to a loft building such as the one here involved, which is located in the garment district of New York City and which regularly rents factory space for the production of finished articles. Indeed the bulk of tenants are contractors manufacturing goods on the premises.

█ The District Court found, however,

---

[2] While the District Court did find that there was "a genuine dispute" between the parties, yet it shows that this was entirely as to the coverage, and came about because of the employees' claim for overtime compensation "shortly after" the Kirschbaum decision, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, and obviously because of it. And it treated the problem of release and accord and satisfaction as one, relying particularly upon Guess v. Montague, 4 Cir., 140 F.2d 500, the basis of the decision below in the Dize case, now repudiated, 65 S.Ct. 900. There was no haggling over amounts here; when appellee made its offer, it was accepted. D.C., 53 F.Supp. 844, 845, 846.

[3] Of course the problem is one to be determined by the public policy disclosed in the Act, rather than by rigorous legal analysis; but, bearing in mind the common-law insistence on consideration for an accord and satisfaction, Rigopoulos v. Kervan, supra, it would seem anomalous that a payment inadequate under the Act to support a formal release might yet be sufficient consideration for an accord.

[4] Even this would seem doubtful; see note 2, supra.

that in the years 1939, 1940, and 1941 respectively, interstate producers occupied only 7.7%, 8.2%, and 10.3% of the available area. Appellants claim that twelve additional tenants produced goods for interstate commerce. And the testimony clearly shows that at the time of production these tenants had at the very least reasonable grounds to anticipate that their products would move in other states. This is all that had to be shown to constitute them interstate producers. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 92, 63 S.Ct. 125, 87 L.Ed. 83; United States v. Darby, 312 U.S. 100, 118, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. These tenants occupied 11.16%, 16.16%, and 23.44%[5] of the space in 1939, 1940, and 1941 respectively. When these figures are added to those of the District Court, then from 1940 on more than 20 per cent of the building was occupied by concerns producing goods for interstate commerce. During this period, therefore, appellants have shown that they were covered by the Act.

The parties have stipulated as to the amount of liquidated damages due should appellants' contention be sustained by us. But their computation is based upon the entire period beginning October 24, 1938, whereas we find that only the period after January 1, 1940, should be included. Since under the authorities the sums paid to secure releases are applied as partial payments of the amounts due, the computation of those amounts must be made by the District Court on remand, in the light of the stipulation, but with deduction of the payments already made from the totals due for both overtime compensation and liquidated damages from 1940 on. The judgment will be for the balance, without interest, but with costs and reasonable attorneys' fees. The sum of $250 is allowed as attorneys' fees for services performed on this appeal.

Reversed and remanded.

CHASE, Circuit Judge (dissenting).

The district judge found on adequate evidence that there was a bona fide dispute over coverage and that the parties dealt at arm's length in reaching an accord as to that followed by its satisfaction by the payment of the overtime wages which would have been due had there been coverage, but without the payment of liquidated damages. In so doing, these employees acted with the knowledge and approval of an official of their union and only after their representative had communicated with the Wage and Hour Division. The facts as to the kind and amount of activity engaged in by the tenants of the building cannot, I think, be determined without weighing the evidence to arrive at the statement of them found in the majority opinion. That is not within our province but the district court should be left free to do that on the remand. That court, which alone has jurisdiction to do so in the first instance, has not yet found the essential facts as to coverage, the district judge saying, "In the view I have taken of the defenses of accord and satisfaction and release, I find it unnecessary and indeed inadvisable to pass on the question of coverage, except to indicate that it presents a genuine issue with respect to which I am by no means certain that the plaintiffs have established a prima facie case."

Moreover, I cannot agree with my brothers that it was erroneous to hold the accord and satisfaction a bar to this suit. It does not seem to me that it was held in Brooklyn Savings Bank v. O'Neil, 65 S.Ct. 895, that, where a bona fide dispute as to liability does exist, a doubtful claim for liquidated damages may not be released in consideration for the payment in full of a doubtful claim for minimum wages and overtime. Anything to the contrary in Fleming v. Post, 2 Cir., 146 F.2d 441, was said in a case where no bona fide dispute as to liability was shown.

Here there was no overreaching by anybody and if ever parties to a real dispute as to liability may finally settle their differences on the basis of a fair compromise duly carried out as agreed that was done in this case. As the district judge well said in his opinion, "The plaintiffs had the option of bringing suit and taking the risk of recovering nothing or avoiding that risk by the acceptance of a compromise proposal." [53 F.Supp. 846] It seems to me that enlightened public policy ought

---

[5] These figures represent appellee's computation. Appellants' computation yields somewhat different figures. But both agree that when the twelve disputed tenants are included, more than 20 per cent of the building was occupied by interstate producers during 1940 and 1941 only. The District Court's finding for 1941 covers the period to its end on February 5, 1942.

698

to permit employees, competently advised as to their rights, to have and to exercise such an option whenever they have the desire and opportunity to do so in cases where the controversy as to liability is based on substantial grounds. I cannot believe, until and unless authoritatively so advised, that they must be restricted to an "all or nothing" gamble.