**WALLING, Adm'r, Wage and Hour Division, U. S. Dept. of Labor, v. UHLMANN GRAIN CO. et al.**

**No. 8568.**

Circuit Court of Appeals, Seventh Circuit.

Oct. 17, 1945.

Douglas B. Maggs, Bessie Margolin, and Joseph M. Stone, Department of Labor, all of Washington, D. C., Kenneth P. Montgomery, of Chicago, Ill., and William S. Tyson, Department of Labor, of Washington, D. C., for appellant.

Frank D. Mayer, Leo F. Tierney, and Jack A. Covey, all of Chicago, Ill. (Mayer, Meyer, Austrian & Platt, of Chicago, Ill., of counsel), for appellees.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This action was brought by plaintiff to restrain defendants from violating the overtime requirements of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The District Court made findings of fact and conclusions of law and entered a judgment ordering that the complaint be dismissed for want of equity. From this order plaintiff appeals. The chief ground urged for reversal is that the court erroneously construed the law applicable to the facts of the case.

Both the corporate defendant and the individual defendants, doing business as a co-partnership, are and have been since prior to the effective date of the Act engaged in the general stock and grain brokerage business in the city of Chicago. The facts are equally applicable to both the corporate and individual defendants and they will hereinafter be referred to as the

defendants. No question is raised but that defendants' employees are entitled to the protection of the Act.

There is little, if any, dispute as to the facts. No attack is made upon the findings of the court. It is only necessary, therefore, to state the portion of such findings or the substance thereof as form the basis for a proper legal conclusion.

Defendants' employees are engaged in various occupations, such as messengers, bookkeepers, board-markers and mail clerks. Prior to the effective date of the Act, defendants' employees were paid on a weekly salary basis. Shortly before the Act became effective, each employee received a notice in his weekly pay envelope stating what his weekly salary had been and that he would be subject to call for 60 hours (48 hours for office girls and 53½ hours for messengers) in each work week. The notice further stated that the employee's "normal rate of pay is —¢ per hour," and that the employee would be paid overtime "at the rate of one and one-half times this normal rate of pay." The form of such notice is set forth in a footnote.[1] Thereafter, in October of 1939 and in October of 1940, similar notices were given to the employees except there was a reduction in the number of hours which an employee was subject to call.

Both prior and subsequent to the effective date of the Act it was customary for the defendants to pay the sum of $2.00 to each employee working until 7 p.m. in any day. This is referred to as "supper money." It was paid without reference to the total hours worked in a day or week and without regard to the employee's rate of compensation. In May, 1940, defendants gave notice to their employees that this payment was "additional compensation."

The time worked by most of the employees each week averaged about 15 hours fewer than those to which they were subject to call, as set out in the notices. With one exception, the regular weekly salary and the nightly payment of $2.00 was the only compensation paid an employee, and this irrespective of the number of hours worked. The exception referred to was an instance where an employee who had worked long hours in a certain week was paid the additional sum of $50.00 in appreciation of the work performed by him.

From the facts thus related, the court further found that the employees accepted the terms of employment set forth in the notices given them by defendants, that such notices constituted contracts of employment between defendants and the employees, and that "the contract set out above contains an hourly rate." Further, under such contract "overtime payments at the rate of one and one-half times the basic hourly rate were provided for all hours of work above forty hours per week."

█ Technically, the finding that an hourly rate was fixed by contract is tenable, but it does not follow that the rate thus fixed can be utilized as a basis for determining overtime compensation. The question still remains as to whether the rate thus fixed was the actual and bona fide hourly rate received by the employees. If so, the decision of the court below must stand; otherwise, it must be reversed. Although not specifically found, it is plainly inferable from the court's findings that the hourly rate designated in the contract was predicated upon the number of hours which an employee was subject to call. The record and the oral argument before this court sustain this view.

[1] "Heretofore, you have been paid $— (per week, or monthly) for the services which you have performed for us. The number of hours which you have worked daily or weekly to complete the work assigned to you has, as you know, fluctuated because of the nature of our business and the type of services performed by you.

"Your salary was established on a (weekly, or monthly) basis to afford you economic security and protect you against the tremendous fluctuations in compensation which would be experienced if you were on an hourly rate.

"In the past, the number of hours you worked each week has varied in accordance with the necessities of the business.

"Until further notice, you will be subject to call for work —— hours in each work week. Although you may be given permission to leave our office, you will be subject to recall, should the necessity of our business demand, during at least the above mentioned number of hours each work week. Your normal rate of pay is —— cents per hour, and you will be paid overtime at the rate of one and one-half times this normal rate of pay. This rate of pay, including overtime, if any, should equal or exceed the compensation you have received from us in the past."

We are convinced that the rate thus determined was not the actual hourly rate of compensation. Such rate could only be determined by dividing the total weekly compensation received by an employee by the number of hours worked. As was said by the Supreme Court in the recent case of Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 1245, decided June 4, 1945:

"Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts."

That this so-called hourly rate did not meet the realities of the situation is further shown from the fact that the amount of compensation received by an employee was the same, irrespective of the number of hours worked. Overtime work resulted in no additional compensation. The employees' wages, including the so-called "supper money," were determined by no different formula after the Act became effective than they had been theretofore. True, defendants' books disclose what purported to be regular and overtime compensation, but this was predicated, as already pointed out, upon an hourly rate which was artificially determined. Such a system, even though adopted in good faith as it perhaps was in the instant case, does not meet the requirements of the Act.

The defendants place great reliance upon Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. The court below also appears to have placed controlling importance on this decision. We cannot say that such reliance was misplaced at the time the instant case was tried and decided. Subsequently, however, the Supreme Court on June 4, 1945 decided Walling v. Harnischfeger Corporation, 325 U.S. 427, 65 S.Ct. 1246, and Walling v. Youngerman-Reynolds Hardwood Co., supra, which in our opinion effectively remove all grounds for relying upon the Belo case as controlling in the instant case. Defendants attempt to distinguish these latter decisions of the Supreme Court from Belo, but we think no good purpose could be served in a discussion of these cases. If the Supreme Court has not repudiated its holding in the Belo case, it has come so close as to leave no room for its application except upon an identical state of facts. It affords no support for the order appealed from.

The order of dismissal is reversed, with directions to proceed in accordance with the views herein expressed.