## ASSELTA et al. v. 149 MADISON AVENUE CORPORATION et al.

District Court, S. D. New York.

Dec. 31, 1945.

Judgment Affirmed June 17, 1946.

See 156 F.2d 139.

Samuel D. Friedman, and Frederick E. Weinberg, both of New York City, for plaintiffs.

Joseph Caine, and Moses M. Cohen, both of New York City, for 149 Madison Avenue Corp.

McLanahan, Merritt & Ingraham, and Robert R. Bruce, all of New York City, for Williams & Co., Inc.

BONDY, District Judge.

This action was brought by maintenance employees in a building owned by the defendant, 149 Madison Avenue Corp., and operated by the defendant, Williams & Co., Inc., to recover unpaid overtime compensation, liquidated damages and a reasonable attorney's fee pursuant to Secs. 7 and 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 207, 216(b).

The building consists of a basement and 12 floors, each covering 7,700 square feet. Of the basement, only 3,850 square feet are rentable. The total rentable area of the building is 96,250 square feet.

Maintenance employees of a building in which at least 20 per cent. of the rentable area is devoted to production of

goods for interstate commerce are to be regarded as engaged in an occupation necessary to the production of goods for commerce and are covered by the Act. Baldwin v. Emigrant Industrial Savings Bank, 2 Cir., 150 F.2d 524, 525, certiorari denied 66 S.Ct. 171; Fleming v. Post, 2 Cir., 146 F.2d 441, 443, 158 A.L.R. 1384; Gangi v. D. A. Schulte, 2 Cir., 150 F.2d 694, 696. See Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460. A tenant is engaged in production of goods for interstate commerce if at least 20 per cent. of his activity is directed on the premises to the production of such goods, Fleming v. Post, supra, which authority is deemed binding on this court. Under Sec. 3(j) of the Act, 29 U.S.C.A. § 203(j), handling of goods incidental to their preparation for shipment in interstate commerce is sufficient to constitute production thereof. Baldwin v. Emigrant Industrial Savings Bank, supra; Fleming v. Post, supra. See Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 503, 65 S.Ct. 335.

Testimony was given as to the extent of occupancy and the nature of the business of only five out of about twenty tenants.

■ Lawrence Fertig & Co. were engaged in creating on the premises advertising material for their clients. They shipped from the premises at least 1,750 engraving plates of the advertisements per month for use in publications outside the state. This constituted more than 50 per cent. of the business they conducted on the premises and yielded more than 50 per cent. of their revenue. Gehring Laces, Inc., was a wholesale jobber of laces and embroideries which were manufactured for it elsewhere and delivered at the premises. From 25 to 30 per cent. of its revenue of over $1,000,-000 each year was derived from goods shipped from the premises to places outside the state. Oliver & Kaufman converted goods on the premises and shipped them to places outside of the state to the extent of about 75 per cent. of their billings. Each of these tenants occupied a floor, or together 23,100 square feet, amounting to 24 per cent. of the rentable space. At least 20 per cent. of the activities of each of these consisted in handling goods for interstate commerce on the premises. The plaintiffs accordingly are covered by the Act. This is so without the inclusion of the Dell Publishing Company which did on the premises all the preliminary and creative work for its publications but none of the printing or purely mechanical work. It shipped therefrom only a comparatively small number of complimentary copies to advertisers and others at special request, amounting at most to 1/10th of one per cent. of all copies of its publications. This is also exclusive of the Atlanta Knitting Mills, which maintained only their executive offices at Madison Avenue, but carried on all their manufacturing at a mill in Catskill, New York, from which all shipments were made to points outside of New York City. The goods of these tenants were produced elsewhere without any manufacturing or substantial handling on the premises. Cf. 10 East 40th Street Building, Inc., v. Callus, 325 U.S. 578, 65 S.Ct. 1227.

■ It is not essential that the plaintiffs prove their damages with mathematical precision. Caperna v. Williams-Bauer Corp., 184 Misc. 192, 53 N.Y.S.2d 295, cited with approval in De Pasquale v. Williams-Bauer Corp., 2 Cir., 151 F.2d 578, 579. For the period from October 24, 1938, to April 20, 1942, the overtime worked by plaintiffs was based on computations made by an accountant from the pay-rolls of the defendant, Williams & Co., Inc., and audited by the Wage and Hour Division. The maintenance manager of Williams & Co. testified that only infrequently were unworked hours not noted on the pay-rolls. Compensation based on these computations was subsequently paid by the defendants to the plaintiffs in exchange for receipts and general releases.

■ The record does not disclose that there was any dispute of any kind culminating in the payments of overtime compensation for this period. There accordingly was not any accord and satisfaction of the plaintiffs' claims for liquidated damages equal to such compensation. Fleming v. Post, supra; Rigopoulos v. Kervan, 2 Cir., 140 F.2d 506, 151 A.L.R. 1126. Nor do the releases constitute a bar or waiver of any right to recover such liquidated damages under the provisions of Sec. 16(b) of the Act. O'Neil v. Brooklyn Savings Bank, 293 N.Y. 666, 56 N.E.2d 259, affirmed 324 U.S. 697, 65 S.Ct. 895; Fleming v. Post, supra. See Gangi v. D. A. Schulte, supra. The acceptance by the employees of a belated payment of overtime wages does not preclude recovery of liquidated damages, the right thereto being mandatory. Rigopoulos v. Kervan, supra. Nor were these

claims barred by the New York three-year statute of limitations relating to actions on statutory penalties or forfeitures. Civil Practice Act, § 49, subd. 3. An action under the Fair Labor Standards Act is not an action on a penalty but on a liability created by statute, to which the six-year statute is applicable. Civil Practice Act, § 48, subd. 2; Walsh v. 515 Madison Avenue Corp., 181 Misc. 219, 42 N.Y.S.2d 262, affirmed 267 App.Div. 756, 45 N.Y.S.2d 927, affirmed 293 N.Y. 826, 59 N.E.2d 183. The liquidated damages constitute additional compensation and not a penalty or punishment. Overnight Motor Co. v. Missel, 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L. Ed. 1682.

It does not appear definitely on what date before October 1, 1939, Gehring Laces, Inc., occupied any part of the building. Consequently, so far as the record discloses, before October 1, 1939, the tenants engaged in the production of goods for interstate commerce occupied less than 20 per cent. of the rentable area.

Plaintiffs accordingly are entitled to recover liquidated damages in an amount equal to overtime compensation paid to them for the period between October 1, 1939, and April 20, 1942.

Defendants contend that from April 21, 1942, to the time of the service of the complaint, December 10, 1943, during which time defendants kept records of actual hours worked weekly by the plaintiffs, they paid overtime at one and one-half times the hourly rates computed according to a formula contained in an agreement between the Realty Advisory Board on Labor Relations, Inc., a voluntary and not an official organization, and Local 32B of the Building Service Employees International Union, of which most of the plaintiffs were members.

The formula provided: "The hourly rates for those regularly employed more than forty (40) hours per week shall be determined by dividing their weekly earnings by the number of hours employed plus one-half of the number of hours actually employed in excess of forty (40) hours."

The agreement provided a weekly rate for a regular workweek in excess of forty hours and an hourly rate to be derived from such weekly rate by dividing the weekly wage by the number of hours worked plus one-half of the hours actually worked over forty and not by only the number of hours actually worked during the week. This formula was "designed to offset the full overtime costs which would ensue if hourly rates were computed in the ordinary way." Its purpose was "to reduce the hourly rate sufficiently, so the payment of time and a half for overtime * * * will not bring the total weekly earnings substantially above the weekly rates set by the Agreement." (Report of the Mediation Panel of the National War Labor Board p. 70, pursuant to whose recommendations the agreement was promulgated.) In practice the formula was not strictly followed. Between April 21, 1942, and December 10, 1943, the hourly rates were changed by recourse to the prescribed formula only when the regular workweek or the weekly earnings changed, whereas, if the formula had been adhered to, the hourly rates would have fluctuated from week to week in accordance with the variations of overtime worked, regardless of whether or not weekly earnings changed.

Having fixed a weekly wage by agreement, the determination of the regular rate became "a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 425, 65 S.Ct. 1242, 1245, 1250. The hourly rates derived by the use of the formula bore no relation to the regular rate of the workweek as defined in Overnight Motor Co. v. Missel, supra. They therefore were ineffective to establish plaintiffs' hourly ordinary time and overtime rates and plaintiffs are entitled to payment of overtime and liquidated damages in accordance with Secs. 7(a) and 16(b) of the Act, 29 U.S.C.A. §§ 207(a), 216(b). See Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311.

The situation in Walling v. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, is clearly distinguishable since there the contracts provided for an hourly rate and not, as here, for a weekly rate to be reduced to an hourly rate by dividing it by hours in excess of those actually worked during the week.

The fact that defendants here actually applied in all situations the hourly rates so derived does not validate such rates. The manner in which the hourly rate is determined and not the application of an hourly rate is the test. Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42, 65 S.Ct. 11; Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 1250;

Walling v. Youngerman-Reynolds Hardwood Co., supra; Walling v. Uhlmann Grain Co., 7 Cir., 151 F.2d 381.

Williams & Co., Inc., acted as the agent of the defendant, 149 Madison Avenue Corp., in the management and operation of the building and had authority to hire and fire employees engaged in its maintenance. The defendant Williams & Co., Inc., is therefore not in a position to urge a dismissal of the complaint as to it on the ground that there was no evidence of its relation to the plaintiffs or the issues. An agent who acts in the interest of an employer in relation to an employee is liable as an "employer" for sums owed by the owners. 29 U.S.C.A. § 203(d); Greenberg v. Arsenal Building Corp., 144 F.2d 292.

As has been stipulated, the parties should agree upon the amount of recovery for the period April 21, 1942, to December 10, 1943, in accordance with this opinion, or in the absence of such agreement, both sides should submit proper computations. The amount of the attorney's fee will be determined upon the settlement of the findings.

See also, D.C., 63 F.Supp. 601.

Irving Rozen, Regional Atty., of New York City, Jeter S. Ray, Asst. Sol., of Washington, D. C., and James V. Altieri, Sr. Atty., and Samuel Gorin, Associate Atty., both of New York City, for plaintiff.

Gins & Massler, of New York City, for defendant.

Erich Cohn, of Forest Hills, N. Y., amicus curiae.