**ROBERG et al. v. HENRY PHIPPS ESTATE et al.**

No. 303, Docket 20227.

Circuit Court of Appeals, Second Circuit.

July 16, 1946.

Alfred S. Julien, of New York City, for plaintiffs.

Harold H. Levin, of New York City (Proskauer, Rose, Goetz & Mendelsohn and Joseph M. Proskauer, all of New York City, on the brief), for defendants.

William S. Tyson, Sol., and Morton Liftin, Asst. Sol., both of Washington, D. C., Irving Rozen, Regional Atty., of New York City, and Eugene Green, Atty., U. S. Dept. of Labor, of Washington, D. C., for the Administrator of the Wage and Hour Division, U. S. Dept. of Labor, amicus curiæ.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an action by nine painters and one window cleaner, all employed by the defendant corporations in various buildings in the City of New York, to recover overtime wages, liquidated damages, and counsel fees under § 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b). It presents once again the recurrent question of the coverage of building maintenance workers in New York City. In addition, one of the plaintiffs, alleging his discharge from employment because of participation in the present suit, seeks an injunction against discriminatory employment

**960**

practice under §§ 15(a) (3) and 17, 29 U.S.C.A. §§ 215(a) (3), 217. The work was performed at three different buildings—two of them the office buildings described in detail below and one of them a downtown loft building.. The District Court granted six of the plaintiffs overtime wages for work done at the loft building and denied the remainder of their claims, dismissed the complaint entirely as to the other four plaintiffs, and denied the injunction. All parties appeal.

■ The defendant corporations are the owners of about fifteen buildings in the City of New York. All the plaintiffs except Roberg were employed as painters and decorators in all of these buildings. Their claims herein concern, however, only the three buildings noted above. Of these, the two office buildings adjoin each other at 580 Fifth Avenue and 1-11 West 47th Street. Roberg was a window cleaner employed exclusively at the office buildings. In their capacity as maintenance workers, plaintiffs were not themselves engaged in interstate commerce; they were, however, engaged in the production of goods for such commerce if a sufficient number of the tenants serviced by them were so engaged. A. B. Kirschbaum Co. v. Walling, 316 U. S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; 10 East 40th St. Bldg., Inc. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263; Baldwin v. Emigrant Industrial Sav. Bank, 2 Cir., 150 F.2d 524, 161 A.L.R. 1234, certiorari denied Emigrant Industrial Sav. Bank v. Baldwin, 66 S.Ct. 171; Fleming v. Post, 2 Cir., 146 F.2d 441, 158 A.L.R. 1384.

In the present case the District Court held that the tenants producing goods for interstate commerce must occupy at least 20 per cent of the rentable space in order for the building maintenance workers to be covered. Finding that the loft building was occupied exclusively by tenants engaged in production of goods for interstate commerce, it gave judgment for the six painters there employed, but only to the extent of that employment. It found that the office buildings lacked 695 sq. ft. of the necessary 20 per cent space devoted to interstate production, and denied coverage of those buildings on that ground.[1] Alternatively, it held that the type of work done by plaintiffs was in any case too far removed from commerce to come within the terms of the Act. On appeal, plaintiffs attack this calculation of the space devoted to interstate commerce; and defendants urge that the nature of the work done precluded recovery even at the loft building. Since all the facts were stipulated, our problem is one of drawing the correct legal inferences therefrom.

■ We reject at the outset defendants' contention. The Act expressly provides that an employee need be engaged only in "any process or occupation necessary to the production" of goods for commerce, § 3(j), 29 U.S.C.A. § 203(j); and the test is not the relative importance of the work, but the practical necessity of its performance to the production of goods. Window cleaners and painters have been held necessary to production, Martino v. Michigan Window Cleaning Co., 66 S.Ct. 379, as have carpenters, porters, and even firemen. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

■ Defendants' real quarrel, however, is not so much with the nature of the activity itself as with the irregularity of its performance. They seem to contend that because the painters were employed in all fifteen of defendants' buildings, they were not daily engaged in the maintenance of the Fifth Ave.-47th St. premises and were therefore not covered by the Act. The Supreme Court's recent decision in Martino v. Michigan Window Cleaning Co., supra, 66 S.Ct. 379, 381, has established the irrelevance of the number of buildings serviced in a case where the maintenance workers were employed by an independent contractor, rather than by the operator of the building. Here plaintiffs not only decorated or painted the entire premises at

---

[1] It originally placed the shortage at 26,080 sq. ft., but made additions of 25,385 sq. ft. after our decision in Baldwin v. Emigrant Industrial Sav. Bank, 2 Cir., 150 F.2d 524, 161 A.L.R. 1234, certiorari denied Emigrant Industrial Sav. Bank v. Baldwin, 66 S.Ct. 171.

least once in two years, but completely painted and redecorated the space rented on each change of tenancy, painted partitions at the request of tenants, and, in alternate years, washed ceilings and floors throughout the two buildings. It is true that certain of the painters spent a relatively small amount of time on the Fifth Ave.-47th St. premises; but five of the nine did the greater proportion of their work there, and the total group proportion was 68 per cent. Defendants employed all of them on a full-time basis in every one of their New York buildings. They maintained on the Fifth Avenue premises central offices from which plaintiffs received their instructions and from which they might be sent to any of the other buildings. We see no reason why the circumstances of their employment should bar the painters' recovery or why any individual employee who happened to spend less of his time at the premises in question should therefore be denied recovery for overtime hours actually worked there.

The real issue in the case, then, is whether the production of goods for interstate commerce by the tenants in the Fifth Ave.-47 St. premises was sufficient to bring the maintenance workers within the terms of the Act. Plaintiffs object initially to the trial court's treatment of the two office buildings as one unit for the purpose of calculation; but the consolidation was entirely justified. The two buildings—one consisting of thirty-three stories and a penthouse, the other of twelve stories and a penthouse—were joined at several floors by connecting corridors and lobbies. They were provided with a single heating and electric power plant and served, to the twelfth floor, by a single bank of freight elevators. Several of the tenants of one building occupied space in the other; and defendants' central office was itself located half in one building and half in the other. Indeed, plaintiffs referred to the buildings as a single one both in their complaint and in the trial court and are now hardly in a position seriously to press objections.

We think the court erred, however, in holding so rigidly and precisely to its 20 per cent yardstick. In A. B. Kirschbaum Co. v. Walling, supra, the Supreme Court held that where a building is occupied by tenants actually engaged on the premises in the physical manufacture of goods for commerce, the maintenance employees are within the Act. It did not, however, lay down any requirement as to the number of tenants who must be so engaged. And while the facts show that in one of the buildings there involved, most of the lessees were interstate producers, there is no indication of the percentage in the second building held covered.[2] The case of 10 East 40th St. Bldg., Inc. v. Callus, supra, on which the trial court relied, held only that a substantial proportion of the tenants must be engaged on the premises in actual production of goods for interstate commerce. See Baldwin v. Emigrant Industrial Sav. Bank, supra, 2 Cir., 150 F.2d 524, 525, 161 A.L.R. 1234; 55 Yale L. J. 421.

The 20 per cent test of substantiality had its origin in a statement by the Administrator that he would be likely to start proceedings for maintenance workers in cases where tenants occupying 20 per cent of the building were engaged in the production of goods for commerce. W-H Release No. PR-19 (rev.), Nov. 19, 1943. It was utilized by us affirmatively in Callus v. 10 East Fortieth St. Bldg., Inc., 2 Cir., 146 F.2d 438, reversed on other grounds 10 East 40th St. Bldg., Inc. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263, in Baldwin v. Emigrant Industrial Sav. Bank, supra, and in Gangi v. D. A. Schulte, Inc., 2 Cir., 150 F.2d 694, affirmed D. A. Schulte, Inc. v. Gangi, 66 S.Ct. 925; but it has never been more than a rough guide or, as the Supreme Court phrased it in the Gangi case, a "working hypothesis." We cannot believe, therefore, that a "shortage" of 695 sq. ft. in a building with an area of 316,300 sq. ft. is a sufficient basis for denial of coverage on the ground of lack of substantial interstate production on the premises.

---

2 It stated merely, "Practically all of the tenants manufacture *or buy and sell ladies' garments.*" 316 U.S. 517, 518, 519, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638. (Italics supplied.)

Even if the 20 per cent standard were to be inflexibly applied, however, the amount of space devoted to production of goods for interstate commerce, as now defined, was far above this requirement. It was stipulated by the parties that Longines-Wittnauer Watch Co., Inc., a manufacturer of watches and timing instruments, did all of its physical production on the premises at West 27th Street and that 70 per cent of its goods went into interstate commerce. On the same floor with its production offices, but in the building designated as 580 Fifth Avenue, it maintained executive, sales, and administrative offices. Three floors below, it operated a storage room and warehouse. These office and storage suites—occupying a total space of 9,865 sq. ft.—were used solely in connection with the manufacturing done in the other building, and the court erroneously excluded them. They were an integral part of the Longines-Wittnauer functional unit and, since the two buildings were being treated as a unit, should have been added to the computation. And similar principles apply to space occupied by another manufacturer of timing instruments and by an industrial engineer engaged on the premises in the making of designs and engineering drafts.

It appears, then, that manufacturers of clothing, watches, and jewelry, all of whom shipped more than 20 per cent of their products into interstate commerce, occupied some 27,255 sq. ft. of the rentable space. Wholesalers of watches, jewelry, and laces, all of whom assembled, encased, repaired, dyed, or otherwise worked on the goods, occupied another 20,905 sq. ft. Advertising concerns preparing on the premises copy for publications going into interstate commerce, industrial designers making drafts for articles shipped in commerce, a broadcasting company preparing programs for nationwide transmission, and an industrial motion picture producer writing stories and cutting film on the premises occupied another 13,570 sq. ft.

■ Moreover, the trial court omitted from the computation 2,505 sq. ft. occupied by a producer of woolen goods who, although maintaining mills outside the state, received and repacked its product in this building for reshipment to clothing manufacturers. When a customer required a shorter length than that in which the material was sent from the plant, the recutting to size was done on these premises. The case is, therefore, clearly distinguishable from that of the wholesale jeweler who merely received and repackaged the goods. As we stated in Baldwin v. Emigrant Industrial Sav. Bank, supra, handling of goods by the manufacturer or his agent even to the point of preparation for shipment is production within the Act. This tenant was engaged in working on the goods for the original manufacturer before they actually entered the flow of interstate commerce, and was therefore engaged in production. Western Union Tel. Co. v. Lenroot, 323 U.S. 490, '65 S.Ct. 335, 89 L.Ed. 414; Baldwin v. Emigrant Industrial Sav. Bank, supra.

■ These instances, which are more than sufficient under the court's yardstick, appear clearly within the precedents, particularly Baldwin v. Emigrant Industrial Sav. Bank, supra. But they cannot be properly singled out for exclusive attention, for other instances, perhaps not so clearly within prior decisions, seem to us at least as deserving of inclusion. Thus the court excluded 2,695 sq. ft. occupied by jewelers and custom tailors who, although actually engaged in physical production on the premises, shipped amounts varying from 5 to 10 per cent into interstate commerce. Here, too, the trial court seems to have imposed a 20 per cent standard. But it has been consistently held that the shipment of any amount of goods which is not a mere incident into interstate commerce places the producer within the Act; and amounts as low as fractions of one per cent have been sustained. Mabee v. White Plains Pub. Co., 66 S.Ct. 511; Phillips v. Star Overall Dry Cleaning Laundry Co., 2 Cir., 149 F.2d 416, certiorari denied All Service Laundry Corp. v. Phillips, 66 S.Ct. 677.

■ Another group of tenants, all of whom were partially engaged in production for interstate commerce, were excluded on the ground that either too small a percentage of floor space was so occupied

or too small a percentage of the lessee's income was so derived. Omitted on this basis were a jeweler who assembled and repaired watches on 25 per cent of the leased premises and two publishers—one because its income so obtained was only 2 to 3 per cent of its total income, and the other because its publishing activities were less than 5 per cent of its operations on the leased premises. There was excluded, too, the space occupied by Scott Publications, Inc., and Scott Stamp & Coin Co., even though one-third of their premises was devoted to publication[3] and their suite was jointly leased and operated by common employees.

We think the court erred in making these exclusions. For the case of a tenant only partially engaged in production, all or almost all of which goes into interstate commerce, is, for the purposes of the Act, analogous to that of a tenant all of whose work is production, but only a fraction of which goes into commerce. When any proportion—or at least enough to satisfy the limited requirements of Mabee v. White Plains Pub. Co., supra—of the tenant's activities is production for interstate commerce, the tenant should be regarded as an interstate producer and his leased space included in determining the total proportion of the building so devoted. The Administrator's 20 per cent yardstick has relevance only as to the amount of floor space occupied by interstate producers, not as to how such producers make use of the space they occupy. For it is obvious that these small businesses, carried on in a few leased rooms, are not so departmentalized that one corner of Room A can be said to be devoted to interstate production while Room B or other corners of Room A are engaged in local production. The business is necessarily carried on as a unit, all of which is devoted, even if only partially and fractionally, to interstate production. Further, the attempt so to subdivide small business units adds fiction to fiction in carrying out a none too workable yard-stick. It makes the incidence of this Act still more uncertain and unpredictable, its determination more expensive and wasteful, and its distinctions more narrow and unreal than those already developed. See '55 Yale L. J. 421, 427.

In our view, therefore, the District Court should have included in its computation under the 20 per cent rule a total of 153,350 sq. ft. or approximately 48 per cent of the entire structure. A building almost one-half of which is devoted to interstate production is obviously so devoted in "substantial" degree and its maintenance workers are within the coverage of the Act.

The trial court correctly dismissed the prayer for injunction against discriminatory practice by one of the plaintiffs on the ground that the Administrator has exclusive authority to bring such an action. Section 17 of the Act, 29 U.S.C.A. § 217, gives the district court jurisdiction to restrain unfair employment practices which violate § 15(a) of the Act, 29 U.S.C.A. § 215(a); but § 11(a) explicitly vests the right of action for injunction in the Administrator alone. Bowe v. Judson C. Burns, Inc., 3 Cir., 137 F.2d 37.

Plaintiff Roberg worked 1,684 hours of overtime, for which he received payment at a normal hourly rate of 65¢; he is therefore entitled to judgment for the unpaid half time in the amount of $547.30, with an equal amount of liquidated damages, totalling $1,094.60. As to the other plaintiffs, we have before us only the total hours of overtime worked in all of defendants' buildings and the total hours of overtime during weeks in which 20 per cent or more of their services were performed at the Fifth Ave.-47 St. premises. Since they are entitled to judgment on the basis of the total hours of overtime in those weeks during which they performed any covered services, we must return the case to the District Court for determination of the amount due. On remand that court may desire to review its award of counsel fees

---

[3] It is not clear from the record exactly which parts of the publishing process took place on the premises. The trial court appears to have concluded that there was actual publication, however, and based its exclusion solely on the grounds stated in the opinion.

in the light of the greater success now achieved by counsel. Counsel fees in the amount of $250 are allowed on this appeal.

On defendants' appeal, judgment affirmed. On plaintiffs' appeal, judgment reversed and case remanded for further proceedings in accordance with this opinion.