**ULLO et al. v. SMITH et al.**

No. 276, Docket 21303.

United States Court of Appeals Second Circuit.

Argued June 16, 1949.

Decided Aug. 22, 1949.

---

Benenson & Israelson, New York City, for appellants. Aaron Benenson, James L. Goldwater and Richard M. Goldwater, New York City, of counsel.

Smith & McInerney, New York City, for appellees. Kevin McInerney and Gerard C. Smith, New York City, of counsel.

William S. Tyson, Solicitor, Bessie Margolin, Assistant Solicitor, William A. Lowe, Harry A. Tuell, Attorneys, United States Department of Labor, Washington, D. C., John A. Hughes, Regional Attorney, New York City, for United States Department of Labor.

Before SWAN and CHASE, Circuit Judges, and SMITH, District Judge.

CHASE, Circuit Judge.

The plaintiffs who have appealed were elevator men, porters, a handyman and a nightwatchman engaged in doing what is generally called the maintenance work in adjoining buildings known as 392 Fifth Avenue and 394 Fifth Avenue in the City of New York, and worked in the years 1938 to 1942 inclusive. The first building had eleven stories and a basement and the second was four stories high. The first three stories of each building had no partitions between them and both buildings were served by the same elevators and had a common heating service and sprinkler system. All parties agreed that for the purposes of this appeal they should be treated as one building, as indeed they are from the standpoint of business use. The appellee Smith owned them and the other appellee was his agent to manage and operate them with authority to engage and discharge employees and to direct and supervise their work.

The appellants were all engaged in work necessary to the maintenance of the building for the purposes to which it was devoted and if a substantial part of the building was used in the production of goods for commerce the appellants were covered by the Act. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L. Ed. 1638. Although the Supreme Court has not yet definitely approved, our previous decisions have translated the substantial use requirement of the Kirschbaum case into mathematical terms by setting up occupancy by tenants engaged in actual physical production on the premises of 20% of the rentable space as the standard for decision. Callus v. 10 East Fortieth St. Bldg., Inc., 2 Cir., 146 F.2d 438, reversed on other grounds, 10 East Fortieth St. Bldg., Inc., v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263; Fleming v. Post, 2 Cir., 146 F.2d 441, 158 A.L.R. 1384; Baldwin v. Emigrant Industrial Sav. Bank, 2 Cir., 150 F.2d 524, 161 A. L.R. 1234, certiorari denied 326 U.S. 767, 66 S.Ct. 171, 90 L.Ed. 462; Gangi v. D. A. Shulte, Inc., 2 Cir., 150 F.2d 694, affirmed D. A. Shulte, Inc., v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208. And we have held that such use need not be proved to equal twenty per cent to a mathematical certainty but that a close approximation will suffice. Roberg v. Henry Phipps Estate, 2 Cir., 156 F.2d 958.

The facts as shown by findings having adequate evidential support are that there were 55,150 square feet of rentable space in the building of which, approximately, from 55% to 98% was occupied by tenants during each of the years involved. There were 31 tenants in all, but the record fails to show the activities of 16 of them. At the trial the appellants conceded "everything" as to these, and the trial judge took it for granted that they were neither engaged in commerce nor in the production of goods for commerce; as that has not

been challenged, we shall make the same assumption.

Four of the other 15 tenants were found to have been engaged in the production on the premises of goods for commerce; these occupied space as follows: 4,195 square feet in 1938, 5,645 square feet in 1939; 4,650 square feet in 1940, 5,300 square feet in 1941 and 5,645 square feet in 1942. The findings as to them are clearly correct. The remaining 11 tenants were found not to be engaged in the production of goods for commerce and this is also so clearly right except in respect to one, American Needlecrafts, Inc., that we need not discuss their activities in detail.

Decision should turn upon whether the space occupied by American Needlecrafts, Inc., 5525 square feet in each year from 1939 through 1942, should have been added to that used by the four tenants previously mentioned. The addition of this space in each year would result in totals as follows: 9,720 square feet in 1938; 11,170 square feet in 1939; 10,175 square feet in 1940; 10,825 square feet in 1941; and 11,170 square feet in 1942. These totals are more than 20% of the rentable space in 1939 and 1942; whether they would sufficiently approximate it in the other years we do not now decide. The findings in respect to American Needlecrafts, Inc., are: "American Needlecrafts, Inc., a manufacturer of quilted articles such as robes, negligees, comforters, bedspreads, etc., had its main office at the building, although its actual manufacturing plants were located in Kentucky. While some productive work was carried on at 392 Fifth Avenue, such production did not constitute a substantial part of the work or activities carried on by this tenant at 392 Fifth Avenue. The premises were used mainly as a business office, showroom and salesroom. Less than 15% of the space occupied by Needlecraft was used for activity that could be classed as producing, manufacturing, handling, transporting or in any other manner working on goods for commerce. The majority of Needlecraft's personnel at 392 did no productive work. There were 14 or 15 employees, composed of three salespeople, two or three girls working in the order department, three in the bookkeeping department, a purchase clerk, a packer, a switchboard operator and two or three in the preparatory department. In addition there were three executives. The executive offices of American Needlecrafts, Inc., occupied 400 square feet, or 7½% of the total space occupied by American Needlecrafts, Inc. True, in the premises at New York, there was some actual work done toward the preparation of the goods for manufacture. Designs originated here. Some preparatory work was done here, which included perforating, 'stamping', model or pattern making and cutting cloth. A small amount of goods was sent back to New York to be put in the showroom for sale. This, of course, had to be packed and shipped. However, what was done by way of preparation etc., I regard as not a substantial part of all the activities carried on in these premises. American Needlecrafts, Inc. was not during the period in question substantially engaged at 392–394 Fifth Avenue in producing, manufacturing, handling, transporting or in any other manner working on goods for commerce."

If the actual space thus determined to be used for physical production were added to the space used by other tenants in the production of goods for commerce the total would fall far short of approximately 20% of the entire rental space in the building. On these facts, which are supported by the evidence, we are consequently squarely faced for the first time by the need to decide whether the amount of space devoted by any one tenant to the production on the premises of goods for commerce must be substantial in respect to the entire space occupied by that tenant in the sense that it must be approximately 20% before the entire space may be counted in applying the technique of aggregation of tenant space units in order to determine whether a substantial part of the building is used for the production of goods for commerce. We are referred to the language in subdivision [6] on pages 963–964 of 156 F.2d in Roberg v. Henry Phipps Estate, supra, which it must be admitted, makes all this space includible. But that

should be regarded as dicta since we had already held in that case that other space not affected by what was there said was sufficient to put the appellant employees within the Act.

While it is true that the amount of production for commerce, provided there is some, is irrelevant on the question whether the producer is engaged in producing goods for commerce, Mabee v. White Plains Pub. Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607, it is equally clear than only those employees who have a recognizable relationship to, and who do a substantial amount of all their work upon, that production, are covered by the statute. Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, 530, certiorari denied, 331 U.S. 812, 67 S.Ct. 1205, 91 L.Ed. 1832.

In applying this latter principle to the problem of determining coverage of maintenance employees, the Supreme Court held in the Callus case, supra, that the relation of such employees to the activities of office employees themselves engaged in production only because of their supervision of physical production activities carried on elsewhere was not a sufficiently close relation to the physical production activities for coverage. An exception to this rule was held to exist only where the building itself was owned and managed and substantially utilized by the same corporation which conducted the production activities elsewhere. Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258. And in dealing with a building occupied by a single business organization we held in Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 789, that the production of goods within the building would bring the maintenance employees within the Act provided "of course, that the proportion of 'goods' produced in the building is enough to color the activities of the employees as a whole." Thus it appears that the fact that an employer does produce some goods for commerce, while sine qua non to coverage, does not sweep all his employees into the category of persons entitled to the benefits of the Act. What brings them within it, on the contrary, is the relation of their own activities to the physical production. By the same token, the fact that a producer of goods for commerce engages in production in space rented in a building does not necessarily give all of that space such a [325 U.S. 679, 65 S.Ct. 1225] "close and immediate tie with the process of production for commerce" that it should be counted in determining whether maintenance employees who served the building as a whole are to be regarded as doing work "necessary to the production of goods for commerce." To the extent that space is actually used by a tenant for the physical production of goods for commerce or for activities related to such physical production on the premises, that tenant so uses the services of the employees of the building and, if space so used is a substantial part of all the space such tenant uses, the tenant's entire space is colored by the use and is properly to be counted with other space in the building so used to determine whether a substantial part of the entire rentable space is devoted to production for commerce. Were this condition not to be enforced all that would be necessary to bring the maintenance employees of a building within the Act would be to have tenants who in the aggregate rented and used a substantial amount of space in a building each devote an inconsequential part of it to the physical condition of goods for commerce and to activities related thereto. It is obvious that the aggregation of parts of rentals which are inconsequential as regards each rental of which they are a part will produce only what is inconsequential as regards the rentals as a whole. And it is equally obvious that the aggregate will be inconsequential as regards the relation of the building services as a whole to physical production. And then the incidence of coverage would depend not upon the utilization of a substantial part of the building for the production of goods for commerce which is made the test in the Kirschbaum case but upon the renting by tenants of a substantial amount of space and their use of an insubstantial part of that for production.

Yet the only justification for the necessarily somewhat arbitrary technique

of determining the status of building employees by classification of the space of individual tenants according to its utilization must be that it makes possible results in complex and widely varying fact situations which are consistent with each other and with the basic statutory standards. This standard applied to individual space units would create such a departure from the basis of substantial relation to actual physical production on which the Supreme Court put decision in the Kirschbaum and Callus cases that we decline to adopt it. Rather we adopt for the classification of an individual tenant's space the same standard which we have applied in cases involving buildings housing single business, treating, for this purpose, activities related to production elsewhere than on the premises as non-productive utilization of the space in accordance with the Callus rule. See Bozant v. Bank of New York, supra; Grant v. Bergdorf & Goodman, 2 Cir., 172 F.2d 109.

█ It does not seem to us that the determination of the substantiality of the production activities engaged in by the individual tenants according to this standard can profitably be determined in terms of area on the basis of a percentage of the space occupied by the tenant which is so used; the trial court in this case however, did not in fact do so but considered in addition to the floor lay-out the percentage of the employees on the premises engaged in actual physical production, the proportion of the activities of other employees which was related to such physical production done on the premises and the quantitative and functional relation of such production to the total production activities supervised from the executive office. This we consider to have been the proper method for determining the question of substantiality; the problem is one of judgment, of the weighing of numerous relevant factors, not one of mensuration. 10 East 40th St. v. Callus, supra, 325 U.S. at page 584, 65 S.Ct. at page 1230.

What we have here is a building rented to various tenants and which, as in the Callus case, supra, is used by them, except as to an insubstantial part, for purposes not physical production for commerce. Since amount of space devoted to the production of goods for commerce is not substantial as we have defined that term in this connection, the maintenance employees of the building are not engaged in activities necessary to the production of goods for commerce and their complaint was dismissed on the merits without error. 10 East Fortieth St. Bldg., Inc., v. Callus, supra.

Affirmed.

SMITH, District Judge (dissenting).

The question at issue is whether the Act covers maintenance workers in a rented building, approximately 20% of whose rentable space is occupied by tenants producing on the premises goods for interstate commerce. Because only a portion of the space rented by these tenants is used in the production of goods for commerce, the trial court's determination is upheld that less than a substantial amount of the space serviced by these employees is devoted to the production of goods for commerce and that their work is not in substantial part necessary to the production of goods for commerce.

This appears to me too restrictive a veiw. The opinion of this Court in Roberg v. Henry Phipps Estate, 2 Cir., 156 F.2d 958, 962, 963, in its sixth and seventh subdivisions, took the view that if tenants occupying approximately 20% of the space serviced were engaged in production of goods for interstate commerce under the Mabee case, then the building maintenance employees were substantially engaged in an occupation necessary to the production of goods for commerce and were within the coverage of the Act.

The Roberg decision in this respect was not dictum except in a rather narrow sense. It could have rested on the other grounds stated and the point not been passed upon. The Court chose however to consider the point and disposed of it in a reasoned opinion.

We should not depart from so recent a decision except for compelling reasons. No such reasons appear to me sufficiently. The test announced by my brothers for

determining substantially is logically justi-
fiable. It lacks, however, the certainty
and utility of the rule of the Roberg case
and tends toward a narrower view of the
coverage of the Act.

Moreover, the Roberg rule for determin-
ing the substantiality of the relationship
of the work of the maintenance employees
to production for commerce seems to ac-
cord with the liberal interpretation of the
act in other respects, as in defining pro-
ducer in the Mabee case.

For the above reasons, I think the trial
court was in error, that American Needle-
craft should have been considered to be
engaged in production, that since the space
occupied by interstate producers including
Needlecraft each year approximated 20%
of the rentable area, plaintiffs should have
been held to be engaged for a substantial
portion of their time in each work week
in occupations necessary to the production
of goods for commerce.