Hosea **JEMERSON et al., Appellants,**

v.

**MERCANTILE NATIONAL BANK AT DALLAS, Appellee.**

No. 14840.

Court of Civil Appeals of Texas.

Dallas.

Sept. 24, 1954.

Rehearing Denied Oct. 22, 1954.

Mullinax & Wells and Houston Clinton, Jr., Dallas, for appellants.

Carrington, Gowan, Johnson & Walker, Arthur J. Riggs and John L. Hauer, Dallas, for appellee.

DIXON, Chief Justice.

The question in this appeal is whether appellants, who are six maids and one porter employed by the Mercantile National Bank at Dallas, come within the coverage of the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219.

The facts disclosed by the record are not disputed. A written stipulation of facts and the deposition of Roy L. Smith, the Bank's auditor, constitute the evidence of record. We take judicial notice of the general practices and customs of the banking business. 17 Tex.Jur. 222; 31 C.J.S., Evidence, § 29, page 560; McCormick & Ray, "Texas Law of Evidence," p. 169.

Appellee owns and operates the Mercantile National Bank Building, which contains 30 floors, a basement, and a subbasement, with total building area of 258,545 square feet. The Bank itself uses and occupies the subbasement and the second, third, fourth and thirtieth floors, the last named being a penthouse. The quarters occupied by the Bank consist of 51,052 square feet of floor space which is 19.5 per cent of the total building floor area. The rest of the building is used as offices by numerous tenants engaged in various professions and businesses.

Appellants perform janitorial and maintenance work and services. Except as shown below their work is performed only in that portion of the building occupied by the Bank. They sweep, clean, and mop the floors, dust the furniture, and in general maintain the Bank's quarters in a state of cleanliness. Two of them perform work on the second floor, two of them on the third floor, two of them in the subbasement and first basement (the last is not part of the banking quarters), and one of them divides her time between the penthouse and "the actual banking quarters." The teller cages, the loan and discount section, the cotton department, and the drive-in banking section are all on the second floor. The record does not specify what floors or specific space is used for other banking operations. Appellants are paid wages of less than 75 cents an hour.

Both Sections 206 and 207 of the Act provide coverage for employees who are (1) engaged in interstate commerce, or (2) in the production of goods for interstate commerce. Appellants do not claim they are engaged in interstate commerce, but they do claim they are engaged in the "production of goods for commerce." The distinction is of importance, for the legal

tests to determine coverage under (1) are not exactly the same as the tests under (2). Tobin v. Girard Properties, Inc., 5 Cir., 206 F.2d 524, at pages 526–527. It should be borne in mind that in this case we are concerned only with the latter provision: employees who are *"engaged * * * in the production of goods for commerce"*. (Emphasis supplied.)

As to what constitutes "production of goods", Section 203(j) as amended in 1949 prescribes the test: "* * * an employee shall be deemed to have been engaged in the production of goods *if such employee was employed in * * * any closely related process or occupation directly essential to the production thereof, * * *."* (Emphasis supplied.)

■ Prior to the 1949 amendment, Section 203(j) read: "* * * or in any process or occupation *necessary* to the production thereof * * *." (Emphasis supplied.) Some of the cases cited by both appellants and appellee interpret the Section as it was before amendment. In our opinion the difference in scope of coverage, if there is any, effected by the 1949 amendment tended to narrow the scope of coverage rather than to enlarge it. Consequently we think the cases supporting appellee's view in this controversy are still applicable.

Appellee contends that the Bank itself does not produce "goods" within the meaning of the Act, so its employees cannot be considered as producers of "goods." Appellants on the other hand assert that the Bank does produce "goods" and in support of their contention cite the cases of Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, and Union National Bank of Little Rock, Ark. v. Durkin, 8 Cir., 207 F.2d 848. In the Bozant case it is said that the mere writing of letters, or the drawing of papers which have no value of their own except as records, does not constitute the production of "goods"; but that the preparation or execution of shares of stock, bond issues, negotiable notes and bills of lading does constitute the production of goods, for such documents—known as specialties—are gen-

erally regarded as more than mere evidence of obligation; from early times they have been treated as the obligations themselves, hence are "goods." Appellee challenges such holding by pointing out that when a commercial instrument is accidentally burned or destroyed, the rights under it do not go up in smoke with the burned paper.

■ We do not believe it is necessary for us to pass on the question above discussed for the reason that regardless of whether appellee Bank is regarded as a producer of "goods," it is our opinion that appellants do not come within the coverage of the Act. We think that under the evidence in this case they are not employed in any *closely related* process or occupation *directly essential* to production. Mitchell v. Household Finance Corp., 3 Cir., 208 F. 2d 667; Addison v. Commercial National Bank, 5 Cir., 165 F.2d 937; Rucker v. First National Bank, 10 Cir., 138 F.2d 699.

If we be wrong in the foregoing conclusion we nevertheless think that appellants are not entitled to recover for another reason: there is no evidence in the record to show that a *substantial portion of their time and work is devoted to the production of goods for interstate commerce*. The record is silent as to what proportion of the Bank's dealings in "specialties" involves interstate commerce, and it is silent also as to what portion of appellants' time and work is devoted to producing "goods" for interstate commerce.

■ Congress in enacting the Fair Labor Standards Act plainly indicated its purpose to leave local business to the protection of the States. It did not intend to exercise the full scope of its commerce power. To bring themselves within the coverage of the Act it was incumbent upon appellants to show that a substantial portion of their time and work is devoted to producing goods for interstate commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Rucker v. First National Bank, 10 Cir., 138 F.2d 699; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Ullo v. Smith, 2 Cir., 177 F.2d

101, at page 105, 12 A.L.R.2d 1122; Connelly v. Hamilton Nat. Bank, 182 Tenn. 77, 184 S.W.2d 173; Gibson v. Glasgow, 178 Tenn. 273, 157 S.W.2d 814.

In Ullo v. Smith, supra [177 F.2d 105], a case relied upon by appellants, the court says: "While it is true that the amount of production for commerce, provided there is some, is irrelevant on the question whether the producer is engaged in producing goods for commerce, Mabee v. White Plains Pub. Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607, it is equally clear that only those employees who have a recognizable relationship to, and who do a substantial amount of all their work upon, that production, are covered by the statute. Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, 530, certiorari denied, 331 U.S. 812, 67 S.Ct. 1205, 91 L.Ed. 1832."

Because the evidence fails to show that appellants are engaged in any closely related process or occupation directly essential to the production of goods for interstate commerce, and also because there is no evidence in the record to show that a substantial portion of their time and work is devoted to such production, we overrule appellants' points on appeal.

The judgment of the trial court is affirmed.