CALLUS et al. v. 10 EAST FORTIETH STREET BUILDING, Inc., et al.

No. 143.

Circuit Court of Appeals, Second Circuit.

Dec. 12, 1944.

Writ of Certiorari Granted Feb. 12, 1945.

See 65 S.Ct. 678.

Aaron Beneson, of New York City (Monroe Goldwater and James L. Goldwater, both of New York City, of counsel) for appellants.

Proskauer, Rose, Goetz & Mendelsohn, of New York City (Joseph M. Proskauer and Harold H. Levin, both of New York

City, of counsel), for appellee 10 East 40th Street Bldg., Inc.

Before L. HAND, A. N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ The plaintiffs' suit is based on the theory that they are "engaged in the production of goods for [interstate] commerce." They can not effectively contend that they are "engaged in [interstate] commerce." McLeod v. Threlkeld, 319 U. S. 491, 63 S.Ct. 1248, 1250, 87 L.Ed. 1538. It is already well-established that, where the tenants of a building are engaged in manufacturing, the service employees of the building come under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. And we have recognized that persons who comprise management as well as those physically engaged in the manufacture of goods are so engaged in production as defined by the Act as to bring the service employees of the office building in which they are located under the coverage of the Act. Borella v. Borden Co., 2 Cir., 145 F.2d 63. The question before us here then is whether a substantial proportion of the tenants of the office building at 10 East 40th Street are engaged in the production of goods for commerce.

■ 1. It is clear, we think, that the investment, finance and credit organizations, the engineering and construction firms, as well as the lawyers, the United States Employment Service and the miscellaneous tenants described above are not engaged in the production of goods for commerce. These tenants occupy about 44% of the available space and 49% of the rented part of the building.

■ 2. It would seem equally clear that the executive offices of the manufacturing and mining concerns are occupied by those engaged in the production of goods for commerce. Borella v. Borden, supra. These tenants occupy about 26% of the rentable area of the building and about 29% of the rented space. Thus, it may not be necessary to go beyond the activities of these tenants to determine that the maintenance employees are entitled to the benefits of the Act. The Wage and Hour Division has adopted a standard of 20% for determining whether a substan-

tial portion of the building is devoted to production for interstate commerce. Release No. PR-19 (rev.) (Nov. 19, 1943). Some quantitative standard is necessary. Interpretations of the Act by the Wage and Hour Division, especially when not taking the form of authorized regulations, are not decisive; but we have been admonished that they are "entitled to great weight." United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 1067, 84 L.Ed. 1345; Skidmore v. Swift & Co., 65 S.Ct. 161. The Division's 20% standard seems to us a sensible one for the courts to adopt.

3. The publicity concerns which design a substantial part of the advertising material, lithographed and printed matter, etc., which are shipped in interstate commerce come within the definition of the Act. These firms occupy about 6.5% of the rentable area and about 7.5% of the rented area of the building. This, added to the space occupied by the management groups yields totals of 32.5% and 36.5% respectively.

■ 4. For the purpose of the statute, the sales agencies representing mining and manufacturing concerns are engaged in the production of goods for commerce. The Act covers "goods" until "their delivery into the actual physical possession of the ultimate consumer." Section 3(i), 29 U.S.C.A. § 203(i). And "production" is defined to include "handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof." Section 3(j), 29 U.S.C.A. § 203(j). Thus, transportation of goods until their delivery to the ultimate consumer is "production" as defined by the statute. A sales agent who procures the contracts in performance of which the goods are "transported" is therefore engaged in the production of goods for commerce, since he is "necessary" to the "transporting." It may be contended that such a construction would bring all retailers within the Act and that Congress had no such intention. § 13(a) (2) of the Act, 29 U.S.C.A. § 213(a)(2), however, specifically excludes employees "engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." This would indicate that where the "selling or servicing is in [interstate] commerce" the employees are to be included in the scope of the Act.

Moreover, sales agents may be considered as engaged in "handling" the goods by arranging their transfer from one person to another. That no physical contact with the goods is necessary we pointed out in the Borella case. Cf. Kirschbaum Co. v. Walling, supra. And § 13(a)(5), 29 U.S. C.A.§ 213(a)(5), specifically excludes employees engaged in "marketing" and "distributing" of certain designated products. By implication, marketing and distributing of other products would seem to be included within the Act.

Furthermore, the activity of the sales agents is economically necessary to the production of goods. As Mr. Justice Jackson recently pointed out, the word "necessary" in the statute is not to be construed so rigidly as to include within the Act only those essential to the actual manufacture of the goods. Armour & Co. v. Wantock, 65 S.Ct. 165.

These sales agencies represent occupancy of about 9.5% of the available area and 10.5% of the rented area. Adding the space they occupy to that occupied by executive offices and publicity concerns yields the result that the portion of the building occupied by firms engaged in the production of goods for interstate commerce is 42% of the rentable area and 48% of the rented area.

Decisions of other Circuits which reached a contrary view seem to have rejected the rationale to which we committed ourselves in the Borella case and to which we shall adhere here.

Reversed.