ULLO et al. v. SMITH et al.

District Court, S. D. New York.
Oct. 8, 1945.

Aaron Benenson, of New York City (James L. Goldwater, of New York City, of counsel), for plaintiffs.

George A. Brooks, of New York City (Kevin McInerney and Peter H. Kaminer, both of New York City, of counsel), for defendants.

CONGER, District Judge.

Plaintiffs bring this action to recover unpaid overtime compensation and an additional equal amount as liquidated damages pursuant to Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b).

The case was tried to the Court without a jury.

Plaintiffs were employed in the buildings at 392 and 394 Fifth Avenue as maintenance men.

The defendant, John Thomas Smith, was the owner of the two buildings and the defendant, Vought, Campbell, Ward and Nicholls, Inc., during all of the time for which extra compensation is herein asked for, had acted as the Agent for the owner of the buildings in the management and operation of the buildings, with authority to hire and discharge employees; to issue instructions to the employees so employed and to con-

trol, direct, and supervise the work of the employees in the buildings.

392 Fifth Avenue had eleven stories and a basement; 394 Fifth Avenue adjoining had four stories, and the two buildings were, for the purpose of this lawsuit and as a matter of fact, considered as one.

The first three floors of each building were open with no partition between. They had the same elevator service, common heating service and sprinkler system. The same employees cared for and looked after both buildings.

In the buildings were a number of tenants who were engaged in taking orders for and selling women's garments, hats, quilting, needlework products, bedspreads, silverware, novelty jewelry, men's hats, women's wearing apparel and other accessories.

On the Fifth Avenue side of the building there had been during most of the time in question a retail store for the sale of women's clothing and other accessories in connection therewith.

The plaintiffs were elevator men, porters, a handyman and a night watchman. They were known as the maintenance men for the building.

There were two sets of elevators in the buildings, one the freight elevator and the other the passenger elevator. It was the duty of some of these men to man the elevators. For instance, in the passenger elevator there would be taken up and down to the various offices and rooms the tenants, the employees of the tenants, and business visitors to the tenants. In the freight elevators would be carried up the goods and merchandise delivered to the tenants and for the tenants and there would be carried out goods and merchandise sent out by the various tenants to their customers. Some of these men, particularly the porters, cleaned up the premises of some of the tenants and in most cases took away from the tenants' premises waste material, papers, etc. Some of these men also entered the tenants' premises for the purpose of providing new electric bulbs, or for making very minor repairs. They also made minor repairs to and serviced the elevators, such as oiling, greasing and cleaning. They also cleaned the common stairways and halls used by the tenants as well as the common toilets used by the tenants.

The period involved is from October 10, 1938, to April 17, 1942. It has been stipulated that these plaintiffs worked on the premises during the time mentioned in the complaint. The hours worked and the overtime they worked has also been stipulated, as well as the amount which would be due each of them if it be decreed here that they are entitled to a verdict. No issue has been raised in connection thereto except that the plaintiff, Charles Zator, claimed to have worked more overtime hours than had been stipulated. An attempt was made to prove this contention. However, I find that plaintiff has failed in that proof and that as far as he is concerned he is entitled to no more money if successful here than had been stipulated.

Plaintiffs contend, first, that a substantial number of the tenants of the building are engaged in interstate commerce; second, that a substantial number of the tenants in the building are engaged in the production of goods for commerce and that, therefore, by reason of the nature of their employment (and by reason of the nature of the work of the various tenants) these maintenance workers in the building come under the provisions of the Fair Labor Standards Act, and are entitled to the relief therein provided by reason of their unpaid overtime work.

I am satisfied that a substantial number of the tenants were engaged in interstate commerce. I am also satisfied that these plaintiffs by reason of their work were not so closely identified with the activities of these tenants that they might have the benefit of the provisions of the Fair Labor Standards Act. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Stoike v. First Nat. Bank, 290 N.Y. 195, 48 N.E.2d 482.

I feel that the plaintiffs were not so closely related to the movement of the commerce as to be a part of it. I do feel, however, that they could recover if it be shown that a substantial number of the tenants in these buildings were engaged in the production of goods for commerce as defined by the provisions of the Fair Labor Standards Act.

That maintenance employees of a building in which the tenants are engaged in the manufacture of goods for interstate commerce are within the Act is too well established for dispute. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

The issue, therefore, resolves itself to this: How many and what proportion of

the tenants of this building are substantially engaged in the production of goods for interstate commerce?

█ The burden of proof rests with these plaintiffs to show that a substantial number of the tenants were so engaged. The word "substantial" as here used has been interpreted to mean that at least 20 per cent of the building be occupied by tenants engaged in the production of goods for interstate commerce. Baldwin et al. v. Emigrant Industrial Savings Bank, 2 Cir., 150 F.2d 524; Gangi v. D. A. Schulte, Inc., 2 Cir., 150 F.2d 694.

The issue is complicated by the further problem as to just what constitutes "production," as defined by the Act to include "handling, transporting or in any manner working on such goods, or in any process or occupation necessary to the production thereof." This latter question presents a real problem and the real problem to be solved here.

I was rather of the opinion after the Circuit Court of Appeals of this Circuit had decided the Callus case (Callus v. 10 E. 40th Street Building, Inc., 2 Cir., 146 F.2d 438), the Borella case (Borella v. Borden Co., 2 Cir., 145 F.2d 63), and the Fleming case (Fleming v. Post, 2 Cir., 146 F.2d 441), that this question was no longer a problem but a mathematical computation, but the U. S. Supreme Court reversed in the Callus case (10 E. 40th Street Bldg. v. Callus, 65 S.Ct 1227), and on the same day affirmed the Borella case (Borden Co. v. Borella et al., 65 S.Ct. 1223), but in the opinion in the Callus case defined the limit to which it intended to go in the Borella case. Then again, the Circuit Court of Appeals of this Circuit in Baldwin v. Emigrant Industrial Savings Bank, supra, apparently in the light of the decision of the Supreme Court in the Callus case modified its holding in the Post case. The answer to the problem presented here is in the above decisions. Before discussing these decisions, it is apropos that the character of the activities of the various tenants in the building be set forth. The attorney for the plaintiffs in his brief has classified 15 of the tenants into four types as follows:

Class 1. Tenants engaged in manufacturing and assembling for commerce.

Class 2. Tenants engaged in handling and packing for commerce.

Class 3. Tenants who maintained manufacturers' sales offices selling goods for commerce.

Class 4. Tenants who were manufacturers' sales agents selling goods for commerce.

The building has 31 tenants. Plaintiffs have shown the business activities of 15 of them. These tenants occupied from 48 per cent of the rentable area of the building in 1938 to 54¼ per cent in 1942. As to the remaining tenants one may very well assume that they were not engaged either in interstate commerce or in the production of goods for interstate commerce.

The great majority of the 15 tenants are engaged in selling, having offices and showrooms.

Defendants' attorney in his brief has divided these tenants in accord with their activities as follows:

A. Tenants having offices, showrooms and storerooms where they carried a stock of finished goods on the premises which they received from manufacturers, unpacked and repacked and shipped.

B. Tenants having offices and showrooms where they sold goods by samples but carried no stock.

One other group of 3 tenants whose activities do not fall in either of the other two groups.

I think these classifications substantially describe the activities of these 15 tenants. However, for the purpose of passing on the activities of these tenants and for the purpose of applying the yardstick of the law as contained in the foregoing decisions, I shall use the classifications put forth by the plaintiffs.

█ It seems to me that there can be no question but that under the decision of the Supreme Court in the Callus case, the tenants in Classes 3 and 4 may not be said to be engaged in the production of goods for commerce. In the Circuit Court of Appeals it was held expressly to the contrary. While the opinion of the Supreme Court does not specifically enumerate the activities of the tenants in the Callus case, it does specifically refer to "sales agencies." It is perfectly clear that by its decision in the Callus case, the Supreme Court held that tenants whose activities are those as described in Classes 3 and 4 are not producing goods and that maintenance employees of a building housing such tenants may not take advantage of the Act by reason of such activities. Neither may they do so by reason of the ruling in the Borella case, supra. In the Borella case the maintenance employees of a build-

ing owned by the Borden Company were held to be so entitled because the Borden Company was engaged in the production of goods in interstate commerce, although not in the building in question but in various plants throughout the United States and Canada.

In the decision in the Callus case, it is perfectly plain that the rule in the Borella case did not apply to maintenance employees of a building renting space to tenants for offices, etc. The court passed on this specifically. I quote [65 S.Ct. 1229]:

"Mere separation of an occupation from the physical process of production does not preclude application of the Fair Labor Standards Act. But remoteness of a particular occupation from the physical process is a relevant factor in drawing the line. Running an office building as an entirely independent enterprise is too many steps removed from the physical process of the production of goods."

The business activities of the tenants in Class 2 present a serious problem. I have carefully read the three decisions in the Callus case. Starting with the opinion of the Judge in the District Court. A close study of these decisions indicate that none of the tenants who had sales offices and showrooms "handled" any of the goods. That is not true of the tenants in Class 2. The tenants here not only took orders for goods but handled them; unpacked and packed them for shipment.

I am not too sure that the Supreme Court intended to make any distinction between these two types of sales businesses. However, we do have an expression of opinion on this point by the Circuit Court of Appeals of this Circuit in two cases to which I now refer. In Fleming v. Post, supra, the court said [146 F.2d 443]:

"* * * And during the entire period in question, one-third of the building was rented by tenants whose business consisted of receiving goods from outside the state and shipping goods outside the state. This business would clearly seem to come within the Act's definition of 'production' which includes 'handling.'" The court then cited its own decision in the Callus case.

The Post case was decided prior to the decision of the Callus case by the Supreme Court. After the decision of the Supreme Court in the Callus case and after its decision in the Western Union case (Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335), it had before it the Baldwin case. In that case the court modified its previous ruling in the Post case, or at least set forth the limits which it felt it should go in the light of the Callus and the Western Union case. The point is so important and determinative of the status of the tenants in Class 2 in this case that I quote from that decision [150 F.2d 526]:

"* * * In addition to these concerns which clearly manufacture goods on the premises" (publicity and advertising concerns—all operations performed on the premises), "a number of manufacturers occupy 14,444 square feet of the available space as showrooms and storerooms. These manufacturers for the most part give their work out to contractors, frequently located outside the state, and receive some of the finished products at the premises, where they repack them or at least put new addresses on old packages, in order to ship them to customers, of whom a substantial number are located outside the state. This work done on the premises clearly constitutes production within the meaning of the Act. For under § 3(j), 29 U.S.C.A. § 203 (j), 'handling' of goods is sufficient to require the employee's classification as one 'engaged in the production of goods.' True, in Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 503, 65 S.Ct. 335, 342, this broad statutory language of section 3 (j) was interpreted not to include the handling of goods for the mere purpose of furthering their interstate transit. But the court went on to say, 'One who packages a product, or bottles a liquid, or labels, or performs any number of tasks incidental to preparing for shipment' is definitely within the scope of the section. Hence it seems that if an employee handles goods merely for a distributor or transporter, he is not engaged in production; but if he does so for a manufacturer, he is engaged in production. At least those who further the manufacturing process by direct work upon the goods, even to the point of preparation for shipment, are so engaged."

With this case in mind I have checked over the tenants in Class 2. I have concluded that Goldmark Hosiery (Reingold Hosiery Company) is a distributor and, therefore, is not engaged in production. This concern has no manufacturing plant and is not connected with one. It buys goods from several manufacturers and then sells the goods to the wholesale trade.

Lesco, Ltd. This tenant should be classified as a manufacturer. It dealt in ladies' handbags and leather novelties. To a substantial amount its goods were made for it by contractors in accordance with specifications and sketches submitted to the contractors. Two-thirds of the business was based on goods so made up and received from the contractors. The goods so made up were delivered to the tenant and eventually sold and repacked and shipped to the customers. Better than 50 per cent of sales were made to customers out of the state of New York.

Herbert & Pohs. This concern dealt in costume jewelry. It maintained a showroom where it had a sample line. Some sales were made from existing stock. When not in stock an order was sent to a manufacturer. All orders were by number. If the manufacturer had the goods in stock he sent them on, if not they had to be made up. When goods were received from the manufacturer they were unpacked, put in stock, and when sold, wrapped up and shipped, the majority of the shipments were made to out of the state customers.

The goods were not made to specifications. On occasions the tenant might buy a sketch which he submitted to the manufacturer, who in turn developed it but the tenant might or might not buy the article. This is not the case of goods made by a contractor according to specifications. This tenant did nothing more than buy the finished articles from a manufacturer and in turn sell them to the trade. Production stopped when this manufacturer completed his part of the contract. This is a border-line case, but I do feel that this firm did nothing more than sell and distribute goods and did not "produce"; whatever handling it did was in connection with the sale of goods and not the manufacture.

■ Stanley Singer, Inc. This concern was engaged in the sale of costume jewelry and this firm should be put in the same category as the one last referred to (Herbert & Pohs). It was in no way connected with manufacturing. As the president of the firm testified: "We buy and sell." True, at least, some of the buying was done pursuant to designs submitted. This, however, in my opinion does not constitute this concern as a manufacturer or handler as part of manufacturing.

Loni Feitler. This tenant is engaged in the same type of business as the two concerns to which I have just referred (Herbert & Pohs and Singer, Inc.) and should be placed in the same category. I do not regard this tenant as engaged in "production."

We now come to the group of tenants designated by plaintiff as Class 1. Plaintiffs' contention is that each of them are engaged in actually manufacturing goods as we ordinarily use the term.

■ Jacob Wallach. This tenant gathered news regarding New York merchandising and markets and distributed it all over the United States. Reporters gathered the news. Stencils were cut to reproduce the various items; releases were run off on a mimeograph machine. About 20,000 sheets were turned out each week, mimeographed, folded, stamped, addressed and forwarded by mail to the various subscribers. Practically all the work was done on the premises. This certainly constitutes "production." Baldwin v. Emigrant Savings Bank, supra.

■ Frederick Schnitzer (Regina Novelty). This tenant was engaged in the business of selling earrings, necklaces, bracelets and similar novelty jewelry. A large percentage of the sales were to customers out of the state. Part of the business consisted of buying these articles from manufacturers and then selling them to the trade. A large and substantial part of the business, however, may very well be classed as manufacturing. Raw materials such as stones, beads and spangles were purchased in bulk and delivered to the tenant's premises where they were made into necklaces, bracelets, earrings, etc. and were then sold to the trade. At least a dozen employees were so engaged. The owner of the business was unable to state just what percentage this branch of his business amounted to. He did say it was a fair size part and that it took up about half of his premises.

This tenant should be classed as one who was engaged to a substantial extent in the production of goods in interstate commerce.

■ Miriam Haskell. There is a real dispute of fact as to the character of business as to this tenant. Plaintiffs claim she did the same type of business as the last tenant (Schnitzer); assembling and producing from various materials such as glass, beads, etc., items of costume jewelry such as earrings, bracelets, etc. However, the tenant, the owner of the business, testified that none of the assembly work or manipulation of materials to make finished articles was

done on the premises during the period in question. In this she is flatly contradicted by one of her former employees. However, it is not necessary to pass on this disputed factual issue. Even on the story of tenant she must be classed as a "producer" of goods. This tenant purchased the materials in bulk; glass, beads, bits of wood, etc., counted them out and sent them out to be made up into jewelry by contractors in accordance with sketches and samples made up by her. When finished they were delivered, put in stock and sold. As a part of the sale, of course, they had to be packed and sent out to the purchasers by the tenant. This tenant may not be catalogued as one who purchased from a manufacturer and was a distributor or sales outfit. If assembling raw materials and fashioning them into various items of jewelry may be said to be manufacturing or assembling, and I think it may, then this tenant is engaged in manufacturing or producing goods, even though the actual work was not done on these premises. She clearly comes under the definition of a manufacturer giving the work out to a contractor. Baldwin v. Emigrant Savings Bank, supra.

■■■ American Needlecraft, Inc. This tenant was a manufacturer of quilted articles such as robes, negligees, comforters, bedspreads, etc. Its actual manufacturing plants were in the state of Kentucky where it had many employees. Its office at 392 Fifth Avenue was the main office of the company. The president, secretary and treasurer had their offices there. Directors' meetings were held there. The bookkeeping for the entire organization was done there, including invoicing, paying, billing and receipts of all payments for goods sold.

These activities, however, as I pointed out heretofore in my discussion of the Borella and Callus decisions, are not such as to bring this concern under the classification of "producers" of goods for commerce.

However, there was some work performed in these offices which should be classed as production or manufacturing. Unfortunately, the testimony is not too clear as to the percentage of this type of work in comparison with the rest of the activity, which I have decided is not "production." A substantial amount of such work (production) should be at least 20 per cent of all the activities of said offices. The evidence has not so convinced me.

It does appear that these premises were used mainly as a business office, showroom, salesroom and that whatever activity might be construed as manufacturing was not substantial. This is confirmed to a certain extent by the type of employees working there. There were 14 or 15 employees, composed of three salespeople; two or three girls working in the order department, three in the bookkeeping department, a purchase clerk, a packer, a switchboard operator and two or three in the preparatory department. In addition there were three executives. True, in the premises at New York, there was some actual work done toward the preparation of the goods for manufacture. Designs originated here. Some preparatory work was done here, which included perforating, "stamping," model or pattern making and cutting cloth. A small amount of goods was sent back to New York to be put in the showroom for sale. This, of course, had to be packed and shipped. However, what was done by way of preparation, etc., I regard as not a substantial part of all the activities carried on in these premises. I have been unable to convince myself from the evidence that this tenant during the period in question was substantially engaged in the "production" of goods for interstate commerce.

■■■ By reason of the above, I have concluded and find that plaintiffs have failed to prove that a substantial portion of the building (at least 20 per cent) was occupied by tenants engaged in the production of goods for interstate commerce.

The rentable area of this building was 55,150 square feet. The floor space occupied by the four firms whom I have classified as concerns producing goods for interstate commerce in each of the years in question was as follows:

1942—5,645 square feet
1941—5,300 "
1940—4,650 "
1939—5,645 "
1938—4,195 "

It may appear that I have been somewhat arbitrary in passing on the character of business of these various tenants. That must be expected. The Supreme Court said in the Callus case:

"On the terms in which Congress drew the legislation we cannot escape the duty of drawing lines. And when lines have to be drawn they are bound to appear arbitrary

764

when judged solely by bordering cases. To speak of drawing lines in adjudication is to express figuratively the task of keeping in mind the considerations relevant to a problem and the duty of coming down on the side of the considerations having controlling weight. Lines are not the worse for being narrow if they are drawn on rational considerations. It is a distinction appropriate to the subject matter to hold that where occupations form part of a distinctive enterprise, such as the enterprise of running an office building, they are properly to be treated as distinct from those necessary parts of a commercial process which alone, with due regard to local regulations, Congress dealt with in the Fair Labor Standards Act. Of course an argument can be made on the other side. That is what is meant by a question of degree, as in the question before us. But for drawing the figurative line the basis must be something practically relevant to the problem in hand. We believe that is true of the line drawn in this case."

I have tried to draw the true line here.

The defendants are entitled to judgment in their favor. Complaint dismissed with costs.

Settle decree on notice.