**G. A. HEFT and Edna S. Heft,**
**Petitioners,**

v.

**COMMISSIONER OF INTERNAL REV-**
**ENUE, Respondent.**

No. 18694.

United States Court of Appeals
Fifth Circuit.

Sept. 15, 1961.

Gibbons Burke, New Orleans, La., for petitioners.

David O. Walter, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Abbott M. Sel-

lers, Acting Asst. Atty. Gen., Hart H. Spiegel, Chief Counsel, Internal Revenue Service, Claude R. Marshal, Special Atty., Washington, D. C., for respondent.

Before RIVES, CAMERON, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The tax question for decision in this case has to do with collapsible corporations. The taxpayers, Mr. and Mrs. G. A. Heft, on their joint returns for 1952, reported long-term capital gains representing liquidation distributions from the Gulf Construction Corporation, a company wholly owned by the Hefts. The Commissioner determined that the corporation was "collapsible" under Section 117(m) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(m). Accordingly, he treated the gains as ordinary income and assessed a deficiency against the taxpayers. The Tax Court sustained the Commissioner's determination. We agree.

The facts are stipulated. In 1949 G. A. Heft organized the Gulf Construction Corporation, a Louisiana corporation, and acquired all its stock for $1,000. The corporation purchased 53 unimproved lots in September 1950 and constructed a single family dwelling on each lot. Mr. Heft expected to sell each house and lot for about $7,825 to $8,800. Gulf sold sixteen of these properties before January 21, 1952. On that date the directors commenced voluntary liquidation proceedings. On the same day, Mr. Heft, as liquidator, transferred to himself 26 of the remaining properties. As liquidator, he sold the other eleven properties during the next four months. He completed liquidation October 31, 1952, by transferring to himself $11,715.61 in cash.

Under Section 117(m) a shareholder is taxed at ordinary income rates on gain from the sale or exchange or liquidation of stock of a collapsible corporation. The section defines a "collapsible corporation" as one "formed or availed of principally for the * * * construction * * * of property * * * with a view to (i) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, prior to the realization by the corporation * * * of a substantial part of the net income to be derived from such property, and (ii) the realization by such shareholders of gain attributable to such property."[1] It is undisputed that Gulf was "formed or availed of principally for the * * * construction * * * of property * * * with a view to" the distributions which took place. The parties agree that this case hinges on whether those distributions occurred "prior to the realization by the corporation * * * of a substantial part of the net income to be derived from such property." It is agreed that the total net income "to be derived" from the properties was $45,700. By January 21, 1952, the date of the first distribution, the corporation had

1. The pertinent portions of the statute are as follows:

"(m) Collapsible corporation.—(1) Treatment of gain to shareholders.—Gain from the sale or exchange (whether in liquidation or otherwise) of stock of a collapsible corporation, to the extent that it would be considered (but for the provisions of this subsection) as gain from the sale or exchange of a capital asset held for more than 6 months, shall, except as provided in paragraph (3), be considered as gain from the sale or exchange of property which is not a capital asset.

"(2) Definitions.—(A) For the purposes of this subsection, the term 'collapsible corporation' means a corporation formed or availed of principally for the manufacture, construction, or production of property, or for the holding of stock in a corporation so formed or availed of, with a view to—(i) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, prior to the realization by the corporation manufacturing, constructing, or producing, the property of a substantial part of the net income to be derived from such property, and (ii) the realization by such shareholders of gain attributable to such property."

realized $7,797 profit, or 17.07 per cent of the total;[2] before the final liquidation in October the corporation had realized a cumulative profit of $23,308, or 51 per cent of the total.

## I.

The taxpayer contends that the $7,797 profit, 17.07 per cent of the total, earned before the initial distribution was a "substantial part" of the total net income of the corporation; that selling 16 properties before liquidation removed any stigma of collapsibility.

This case requires the application of an uncertain general standard to certain, particular facts. In this Court's recent decision in Commissioner v. Kelley, August 2, 1961, 5 Cir., 293 F.2d 904, affirming the Tax Court's holding that 33 per cent was "substantial", we pointed out that "the ordinary dictionary meaning of 'substantial' is: 'Considerable, in amount, value or the like; large, as a *substantial* gain' (Webster's New International Dictionary (2d Ed. unabridged 1958); 'of ample or considerable amount, quantity or dimension' (Oxford English Dictionary 1933). We concluded that the term "substantial" is a relative one. Its meaning rests on an implied comparison between the described subject and a larger unit, just as the expression "a substantial saving," suggests that the saving is "substantial" in comparison with the value of the item purchased. In contrast to a fixed relative term, such as twenty per cent, expressing the same proportional relationship in every context, "substantial" may indicate a certain proportion in one instance, a different proportion in another. To as-

certain its meaning in any particular context one must examine the frame of reference and the purpose intended by use of the term. The taxpayers have referred to several decisions holding that portions smaller than seventeen per cent are "substantial." In none of those cases does the term "substantial" appear in the tax context in which it must be considered here.

■■ The purpose of Section 117(m) is to prevent taxpayers from utilizing the corporate form as a "device whereby one or more individuals attempt to convert the profits from their participation in a project from income taxable at ordinary rates to long-term capital gain taxable only at a rate of 25 percent."[3] See Commissioner v. Kelley. Section 117(m) is directed at curtailing use of this loophole. By its terms, however, it does not apply if the owners hold their stock until after a "substantial" part of the corporation's income has been realized. This restriction enables taxpayers to continue to bring a considerable part of the corporation's ordinary income through the hole in the fence to the greener pasture of capital gains treatment.[4] In spite of the large hole in the fence, the purpose of Congress to prevent abuse of the favored treatment accorded capital gains is clear, and the statutory terms should be construed to promote that purpose. Undoubtedly seventeen per cent could in many contexts constitute a "substantial" portion, but this result is not demanded by the inherent meaning of the term, and a larger portion may appropriately be required in order to satisfy the statutory standard.[5] The ease with which

2. The profit from the sales of the 16 properties was $5,092.54, or 12.86 per cent. The income from the net rent was $2,704.03. The two amount to 17.07 per cent of the total net income of $45,700 expected to be realized from the properties.

3. H.R.Rep. No. 2319, 81st Cong., 2d Sess. 96 (1950-2 Cum.Bull., 380, 449); S.Rep. No. 2375, 81st Cong., 2d Sess. 88 (1950-2 Cum.Bull., 483, 586). See also 1 House Hearings before Committee on Ways and Means, 81st Cong., 2d Sess., Revenue

Revision of 1950, p. 70; Section 39.117 (m)–1 (d) (2) (v) and (3) (ii) of Treasury Regulations 118.

4. See Commissioner v. Kelley, 5 Cir., 1961, 293 F.2d 904.

5. The Fair Labor Standards Act has been interpreted to apply to maintenance employees in an office building if "a substantial number of the tenants" are engaged in interstate commerce; in this instance "substantial" has been construed to require "at least twenty per cent."

**798**

the statutory purpose might otherwise be avoided presents a strong reason for giving the term a broad rather than a narrow meaning. Considering this statutory purpose and giving weight, as we should, to the findings of the Tax Court, we hold that one-sixth of the total net income to be derived from property does not constitute a "substantial part" for purposes of determining collapsibility.

**II.**

 The taxpayers contend that even if the seventeen per cent profits earned before January 21, 1952 are not considered a "substantial part of the net income" of the corporation, section 117 (m) does not apply. This is on the ground that the corporation continued operations after the initial distribution and, before its termination, realized over fifty per cent of its income and paid taxes thereon. If the corporation had withheld the initial distribution until its final liquidation in October, Section 117(m) would not have applied. Petitioners contend that "it is the fact of realization by the corporation and not the time thereof that is important."

Unfortunately for the petitioners, the statute focuses on the timing of the transactions: the corporation is collapsible, if the exchange of stock occurs "*prior to* the realization" ; the corporation must realize a "substantial part of its net income" *before* the stockholders sell or exchange their stock. The collapsibility of the corporation is determined, therefore, when the shareholders first sell or exchange stock in the corporation. Since the test is embodied in the definition of "collapsible corporation" and the statute applies indiscriminately to any gain from the sale or exchange of stock in a collapsible corporation, if an initial liquidating distribution falls within the statute all subsequent distributions also come within the ambit of the statute irrespective of whether at the time of a later distribution the corporation has earned a substantial part of its income.[6]

It may well be that shareholders who liquidate their corporation by a series of distributions may be caught under section 117(m) even though most or even all of the corporation's income is eventually realized by the corporation and taxed to it, whereas by waiting until a substantial part of the income has been realized they could have avoided Section 117(m) and yet have acquired a major part of the corporation's property without the income attributable to it being taxed to the corporation. However, the statute is not directed at the avoidance of *corporate* income taxes. Section 117 (m) is aimed at preventing taxpayers using a corporation to avoid individual stockholder gains from stock sales or corporate distributions from being accorded capital gain treatment. These are separate problems. Even if section 117 (m) applied except when one hundred per cent of the income was realized by the corporation, this would not entirely close the personal tax loophole; the corporate tax added to a capital gains tax could still be less than the regular income tax at a high bracket. To screen out the most flagrant cases abusing the favored capital gains treatment accorded to sales or exchanges of stock, Congress selected a test based on the sequence of transactions rather than a test geared to the amount of tax paid by the corporation. Under the chosen test, the statute unmistakably applies to the taxpayers in this case.

Judgment is

Affirmed.

CAMERON, Circuit Judge, concurs in the result.

Ullo v. Smith, D.C.S.D.N.Y.1945, 62 F. Supp. 757, 760. See Baldwin v. Emigrant Industrial Savings Bank, 2 Cir., 1945, 150 F.2d 524; Callus v. 10 E. 40th Street Building, Inc., 2 Cir., 1945, 146 F.2d 438.

6. Petitioner argued that under Louisiana law the distribution did not occur until the later date when it was completed. The time of distribution, however, is governed by federal rather than state law, and the distribution was legally effective when made.

RIVES, Circuit Judge (concurring specially).

As stated in a brief dissent in Commissioner v. Kelley, 5 Cir., 1961, 293 F.2d 904, 914, I hold the opinion that "a substantial part," as used in Section 117 (m), should be construed to have reference to the part not yet realized. If that is the true construction of Section 117 (m), then it is clear that the decision of the Tax Court in the present case should be affirmed. If, however, the majority opinion in Commissioner v. Kelley, supra, is accepted, then I would still think that the decision of the Tax Court in the present case should be affirmed, but, in that event, for the reasons so well expressed in the opinion in this case by Judge WISDOM. I therefore concur specially.