JAMES A. HELFAND and ARLENE M. HELFAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Helfand v. Commissioner
Docket No. 10117-82.
United States Tax Court
T.C. Memo 1984-102; 1984 Tax Ct. Memo LEXIS 573; 47 T.C.M. (CCH) 1203; T.C.M. (RIA) 84102; March 1, 1984. James A. Helfand, pro se. Karen Nicholson Sommers, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioner's Federal income taxes for taxable year ended December 31, 1979, in the amount of $422. After concessions, the sole issue for decision herein is the extent, if any, to which petitioners were entitled to a deduction under section 167(a), [1] in their taxable year ended December 31, 1979, for the depreciation of rental property purchased by them on December 21, 1979. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation and the exhibits attached thereto are incorporated by this reference. James A. *575 Helfand (hereinafter referred to as "petitioner") and Arlene M. Helfand were husband and wife (hereinafter referred to collectively as "petitioners") and residents of San Diego, California at the time of filing their petition herein. Petitioners timely filed a joint Federal income tax return for the taxable year ended December 31, 1979, with the Internal Revenue Service Center in Fresno, California. On December 21, 1979, petitioners purchased a single family residence located at 8042 Camino Tranquilo in San Diego, California for a total consideration of $116,806. This property was acquired and held by petitioners for use as a residential rental property, and, as of the trial in this matter, it continued to be held as such. Petitioners first rented the property in January 1980. Petitioners' depreciable basis in the Camino Transquilo property as of the end of taxable year 1979, was $77,871, consisting of the following components: (1) Building - $73,188; (2) appliances [2] - $1,553; and (3) carpets and drapes - $3,130. For purposes of accounting for the depreciation of the Camino Tranquilo property, petitioners combined these items into a separate composite account, as provided *576 for in section 1.167(a)-7(a), Income Tax Regs.
On their Federal income tax return for taxable year ended December 31, 1979, petitioners utilized straight-line depreciation over a 25-year composite useful life for the Camino Tranquilo property. Treating their account for such property as a "multiple asset account," within the meaning of section 1.167(a)-10(b), Income Tax Regs., petitioners applied an "averaging convention" provided for thereunder, whereby they assumed that all additions to and retirements from the account occurred uniformly throughout the taxable year, resulting in depreciation computed on the average of the beginning and ending balances in such account for the taxable year. This computation resulted in a depreciation allowance for the Camino Tranquilo account in the amount of $1,557 for 1979 (in effect, depreciation for a six-month period), and petitioners deducted this amount of depreciation for such account on their Federal income tax return for that year. Petitioners did not elect on such return to include an *577 additional first-year depreciation allowance under section 179 with respect to any tangible personal property associated with their Camino Tranquilo property. Absent use of the averaging convention, the depreciation allowable to petitioners in 1979 with respect to these assets, using the same cost bases and composite rate and based upon eleven days of ownership, would have been $94. By timely notice of deficiency, respondent disallowed the entirety of the depreciation deduction claimed by petitioners for 1979 with respect to the Camino Tranquilo property, citing the following, in pertinent part, [3] as the reasons therefor: It has not been established that you are entitled to use the depreciation method described as an "averaging convention method" that is, by using an assumed timing of additions and retirements "[sic] in the case of a multiple asset account. Also, it has not been established that the deduction does not materially distort the depreciation allowable. *578 The use by petitioners of the averaging convention in 1979 with respect to the Camino Tranquilo property substantially distorted the depreciation allowance for that year. OPINION Pursuant to section 1.167(a)-10(b), Income Tax Regs., the period for depreciation of an asset begins when the asset is "placed in service," and a "proportionate part of one year's depreciation is allowable for that part of the first and last year during which the asset was in service." It is sufficient for a finding that the instant property was placed in service that it was held for the production of income, even where it was not actually rented. See Sears Oil Co., Inc. v. Commissioner,359 F.2d 191 (2d Cir. 1966), affg. in part, revg. in part and remanding in part a Memorandum Opinion of this Court; SMC Corp. v. United States, 80-2 USTC par. 9642, 46 AFTR 2d 80-5827 (E.D. Tenn. 1980), affd. 675 F.2d 113 (6th Cir. 1982); cf. Grow v. Commissioner,80 T.C. 314 (1983). Compare Cooper v. Commissioner,542 F.2d 599 (2d Cir. 1976), *579 affg. a Memorandum Opinion of this Court. We have found that petitioners purchased the Camino Tranquilo property in issue on December 21, 1979. There is no dispute that this property was held by petitioners for the production of rental income as of the date they acquired it, even though it was not actually rented until January 1980. Accordingly, since petitioners placed their Camino Tranquilo rental property in service on December 21, 1979, they were entitled to depreciate it, at least as of that date. Petitioners, claiming for 1979 not just eleven days, but the equivalent of six months of straight-line depreciation for their Camino Tranquilo property, rely upon the use of an averaging convention provided for in section 1.167(a)-10(b), Income Tax Regs., as follows: However, in the case of a multiple asset account, the amount of depreciation may be determined by using what is commonly described as an "averaging convention," that is, by using an assumed timing of additions and retirements. For example, it might be assumed that all additions and retirements *580 to the asset account occur uniformly throughout the taxable year, in which case depreciation is computed on the average of the beginning and ending balances of the asset account for the taxable year. See example (3) under paragraph (b) of section 1.167(b)-1. * * * An averaging convention, if used, must be consistently followed as to the account or accounts for which it is adopted, and must be applied to both additions and retirements. In any year in which an averaging convention substantially distorts the depreciation allowance for the taxable year, it may not be used. [Emphasis added.] Contending that they combined the building, appliances, and carpets and drapes at their Camino Tranquilo property into a qualifying "multiple asset account," petitioners claimed a depreciation deduction therefor in 1979 in the amount of $1,557, computed as the average of their asset balance at the beginning of 1979, which was zero, and their asset balance at the end of that year, which was $77,871, spread over a 25-year "composite" useful life. In opposition to petitioners' utilization of this averaging convention, respondent contends, first, that the Camino Tranquilo property purchased *581 by petitioners could not qualify as a multiple asset account, and second, that the use of the averaging convention to compute first-year depreciation on such property substantially distorted the depreciation allowance for taxable year 1979. [4]
The averaging conventions authorized by section 1.167(a)-10(b), Income Tax Regs., may be applied only to a "multiple asset account," within the meaning of that section. The term "multiple asset account" is not explicitly defined in the regulations. Section 1.167(a)-7(a), Income Tax Regs. *582 , provides, however, that depreciable property may be accounted for either by treating each individual item as an account or by "combining two or more assets in a single account." Exemplary of the latter type of account, under that section, are the "group account," wherein assets similar in kind with similar useful lives may be grouped together; the "classified account," wherein assets are segregated according to use without regard to useful lives; and the "composite account," wherein assets are included in the same account regardless of their character or useful lives. Petitioners herein identify their Camino Tranquilo account as a multiple asset account of the composite type, wherein multiple assets were grouped without regard to their character or useful lives. Respondent concedes that a rental residence, like the Camino Tranquilo property, can be categorized as a composite asset consisting of disparate components, and that a grouping of personal property and real property in one account, as elected by petitioners, may constitute a composite account. Respondent challenges petitioners' assertion, however, that the Camino Tranquilo composite account constituted a "multiple asset *583 account," eligible as such to use the averaging conventions provided for in section 1.167(a)-10(b), Income Tax Regs.
Upon examination of the regulatory provisions involved, we are persuaded that a composite account is, by definition, a type of multiple asset account. A composite account, as we have found, is one way of "combining two or more assets in a single account." That such a combination gives rise to a "multiple asset account" is suggested, not only by the manifest meaning of the terms, but also by the reference in section 1.167(a)-10(b), Income Tax Regs., as excerpted above, to example (3) under section 1.167(b)-1(b). The cited example illustrates the use of straight-line depreciation for group, classified and composite accounts, clearly linking those terms to the concept of a multiple asset account under section 1.167(a)-10(b). It follows, then, that petitioners' grouping of the building, appliances, and carpets and drapes at their Camino Tranquilo property, gave rise to a multiple asset account of the composite type. Respondent suggests additionally, however, that the Camino Tranquilo account could not *584 be a multiple asset account because petitioners failed to show that they had made or intended to make additions to the account. We cannot agree. For their tax year 1979, petitioners established the subject account, concurrently adding to it during that year the building, appliances and the carpets and drapes at their Camino Tranquilo property. We believe that whether such assets were added to petitioners' account simultaneously or sequentially is irrelevant to our determination of whether a multiple asset account was established. [5] Furthermore, contrary to respondent's objections, it is also irrelevant whether or not petitioners planned to add later-acquired assets to their Camino Tranquilo account, since under section 1.167(a)-7(c), Income Tax Regs., a taxpayer may establish as many accounts for depreciable property as he desires. *585 The final issue for determination herein is whether the averaging convention utilized by petitioners resulted in a substantial distortion of the depreciation allowance for their taxable year ending December 31, 1979, within the meaning of section 1.167(a)-10(b), Income Tax Regs. While petitioners first urge that we measure such distortion against their gross or taxable income for the tax year in issue, the regulation refers, not to a distortion of income, but to a distortion of depreciation. We accordingly believe that the appropriate measure of depreciation distortion pursuant to the regulation requires a comparison of the depreciation claimed for the subject multiple asset account, under the averaging convention elected, with the depreciation otherwise allowable for such account, without reference to such averaging convention. Before turning to an examination of this distortion factor in light of the present facts, however, we must first determine whether such depreciation otherwise allowable, as suggested by petitioners, should be computed with reference to depreciation allowable, not only under section 167, but also under section 179. For *586 taxable year 1979, section 179(a) provided for certain additional first-year depreciation, as follows: (a) General Rule.--In the case of section 179 property, the term "reasonable allowance" as used in section 167(a) may, at the election of the taxpayer, include an allowance, for the first taxable year for which a deduction is allowable under section 167 to the taxpayer with respect to such property, of 20 percent of the cost of such property. Additional first-year depreciation under section 179 was available only for qualifying tangible personal property, which, according to petitioners, included the appliances and the carpets and drapes at their Camino Tranquilo property. Such an additional allowance was available for qualifying property, however, only if the taxpayer elected it. Section 179(c). See Sharon v. Commissioner,66 T.C. 515, 533 (1976), affd. 591 F.2d 1273 (9th Cir. 1978). This election was required to be made by showing as a separate item on the taxpayer's return the total additional first-year depreciation claimed with respect to *587 the section 179 property selected. Section 1.179-4(a), Income Tax Regs. It is uncontroverted herein that petitioners failed to make this election on their tax return for 1979. Petitioners' contention that the additional allowance should nonetheless be considered as part of their depreciation allowance for 1979, within the meaning of section 1.167(a)-10(b), Income Tax Regs., apparently rests upon the conclusion that their decision to group real and personal property into a multiple asset account, precluded their election of section 179 depreciation for any part of that account. We disagree. The regulations under section 179 address the treatment of a taxpayer electing to use both an averaging convention and additional first-year depreciation, indicating the compatability of these two depreciation concepts. Section 1.179-1(e), Income Tax Regs. Furthermore, while a taxpayer might choose to account separately for personal property for which section 179 depreciation might be available, and real property, for which it would not, we are aware of nothing under sections 167 or 179 which would prevent *588 a taxpayer from accounting for both types of property in a multiple asset account, and claiming additional depreciation as to only the qualified portion of that account. While we therefore conclude that petitioners could have elected additional first-year depreciation without compromising their eligibility to use an averaging convention, they chose not to do so. [6]
*589 Thus, as we have indicated, we think the correct standard for testing for substantial distortion, within the meaning of the applicable regulation, is to measure the depreciation under section 167 actually produced for the year by petitioners' use of the averaging convention against the depreciation which would have been produced if the averaging convention had not been elected, with respect to the particular multiple asset account in question, and without considering depreciation deductions otherwise available to petitioners under other Code sections or from other assets. [7]
Having thus determined the appropriate basis upon which to measure *590 the distortion of depreciation under section 1.167(a)-10(b), Income Tax Regs., we turn, finally, to an examination of the substantiality of the distortion reflected in this case. In view of the absence of a regulatory definition of "substantial distortion," within the meaning of section 1.167(a)-10(b), Income Tax Regs., we begin this examination with a consideration of the purposes underlying the averaging conventions provided for in that section. In this regard, an observation by the Court of Appeals for the Fifth Circuit, facing the meaning of the term "substantial" as used in the context of the collapsible corporation provisions of the Code, is appropriate: In contrast to a fixed relative term, such as twenty percent, expressing the same proportional relationship in every context, "substantial" my indicate a certain proportion in one instance, a different proportion in another.To ascertain its meaning in any particular context one must examine the frame of reference and the purpose intended by use of the term. Heft v. Commissioner,294 F.2d 795, 797 (5th Cir. 1961), affg. 34 T.C. 86 (1960). *591 As acknowledged by both parties herein, it is the purpose of the regulatory averaging conventions to simplify depreciation accounting where multiple assets are acquired or disposed of during the taxable year. Since a taxpayer may aggregate multiple assets into a group, classified or composite account with or without electing use of an averaging convention, section 1.167(a)-7(a), Income Tax Regs., it is clear that the additional simplicity attained by use of such a convention results, not solely from the combination of multiple assets in one account, but from the consistent treatment of multiple transactions under one chosen averaging assumption. [8] Thus, where a taxpayer simultaneously adds multiple assets to an account, the date that such assets were placed in service is no less fixed than is the date derived from application of an averaging convention. The purpose underlying the averaging convention is therefore most clearly served where, unlike the present case, additions to a multiple asset account are made, not simultaneously, but sequentially over the taxable year. *592 With this analysis of the purposes underlying the averaging convention in mind, we turn to a quantitative assessment of the depreciation distortion occasioned by petitioners' election to utilize an averaging convention for their taxable year 1979. We have already found that petitioners claimed depreciation for their Camino Tranquilo account with reference to an averaging convention which resulted in a straight-line depreciation allowance for 1979, in the amount of $1,557. We have also found that, but for their use of said averaging convention, petitioners were entitled to depreciate the assets in their Camino Tranquilo account only as of the date they were placed in service, or as of December 21, 1979, for a total depreciation otherwise allowable (applying the same depreciation rate to an eleven-day period) of $94. A comparison of these figures clearly demonstrates that the averaging convention utilized by petitioners resulted in a substantial distortion of their depreciation allowance for the Camino Tranquilo property for 1979. [9] As such, petitioners' use of such averaging convention for that year must be disallowed. Consistent with our finding that the property was acquired *593 on December 21, 1979, and was placed in service by petitioners on that day, however, we hold that petitioners were entitled to a depreciation deduction for that eleven-day period of $94. Kern Co. v. Commissioner,1 T.C. 249 (1942); section 1.167(a)-10(b), Income Tax Regs.
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure, unless otherwise stated.↩
2. Neither the number nor the nature of such appliances is disclosed on this record.↩
3. The deficiency notice additionally adjusted the allocation between land and building of the purchase price of the Camino Tranquilo property, as reflected on petitioners' return. By stipulation of the parties, however, this issue was conceded by respondent. Other adjustments in the notice of deficiency relating to a separate property in another account, owned by petitioners and located at 10565 El Comal Drive, were settled by agreement of the parties prior to the trial in this matter. A medical expense adjustment also determined by respondent will be determined as an automatic adjustment under sec. 213 when the remaining issue for 1979 is resolved herein.↩
4. In addition, respondent contends that petitioners did not compute the composite life of the assets correctly. This issue was first raised by respondent on brief, is manifestly unfair to petitioners, and we will not consider it. Philbrick v. Commissioner,27 T.C. 346↩ (1956). We further note that the same composite life used by petitioners was used in respondent's statutory notice, clearly indicating that petitioner was on no notice that respondent intended to raise such an issue.
5. Indeed, faced with a taxpayer who simultaneously placed into service in a purported multiple asset account, a "large unusual purchase" of several units of machinery, respondent disallowed use of an averaging convention on the grounds that it resulted in a substantial distortion of the taxpayer's depreciation allowance for the taxable year in issue, and not on the basis that the taxpayer failed to establish a qualifying multiple asset account. Rev. Rul. 73-202, 1973-1 C.B. 81↩.
6. Petitioner testified, and argued on brief, that, in addition to his belief that use of the averaging convention precluded an election under sec. 179, he did not make such election because the cost of obtaining expert appraisals of the cost bases of the personal property elements of the Camino Tranquilo property would have been excessive. Even if we accept this argument, it would not advance petitioners' cause, since the cost of obtaining such appraisals would be the same whether petitioner elected the averaging convention or not, so that, in either case, we must presume that petitioner would not have elected the benefits of sec. 179↩, and no additional first-year depreciation would have been available to him in 1979. We further note that the parties were able to stipulate the correct cost bases of the various elements of the Camino Tranquilo property in this case, apparently without the benefit of such expert appraisal.
7. To decide otherwise on this question might allow a taxpayer using straight-line depreciation, like petitioners, to claim that a chosen averaging convention failed to substantially distort the depreciation allowance which might have been available to him if he had chosen some accelerated depreciation method instead. See secs. 167(b) and (j). Petitioners have failed to convince us that such conjectural considerations were contemplated by the regulatory test under sec. 1.167(a)-10(b), Income Tax Regs.↩
8. Since petitioners were free to use a composite account, regardless of their election to use an averaging convention, their observation that "the computation of depreciation for one account is about three times easier than the computation for three accounts," has little to do with such election.↩
9. Compare Rev. Rul. 73-202, 1973-1 C.B. 81↩.